*A. Iglehart*, for appellee.

*J. M. Shackelford* and *C. Denby*, for appellee.

* * *

THE LAFAYETTE and INDIANAPOLIS RAILROAD COMPANY *v.* ADAMS.

NEGLIGENCE.—RECKLESSNESS.—Where the negligence of the defendant is so gross as to imply a disregard of consequences, or a willingness to inflict the injury, the plaintiff may recover, though he be a trespasser, or did not use ordinary care to avoid the injury.

PRACTICE.—CORRECT RESULT.—When a verdict is clearly right upon the evidence, the Supreme Court will not reverse the judgment, though the court below may have erred in the instructions given to the jury.

APPEAL from the *Boone* Circuit Court.

FRAZER, J.—This was a suit by the appellee against the appellant to recover damages for an injury resulting from having been run against by one of the appellant's locomotives, passing upon its railroad.

It was alleged in the complaint that the railroad passes through a street in *Thorntown*; that on account of the populousness of the town, and the number of persons continually passing along the street, it was the defendant's duty to run its locomotives slowly and with great care; that on, &c., the plaintiff was passing along said street, as she lawfully might, when a locomotive of the defendant's was also passing the same place; that said locomotive was not run slowly and with care, but, on the contrary, at an undue

speed of about twenty-five miles an hour, and negligently and recklessly, by reason of which, and "without negligence on the part of the plaintiff," she was run over and injured, &c. A demurrer to the complaint was overruled.

An answer in four paragraphs was then filed: 1. General denial. 2. Admitting the injury, but denying gross negligence and recklessness in running the train, and alleging that the plaintiff was, at the time when, &c., guilty of negligence and carelessness which contributed to the injury complained of, in this, that the defendant only occupied at the time when, &c., a part of said street in said town with the track of the railroad, leaving ample room on the street sidewalks for the plaintiff to pass and repass along and over the street, without risk or danger, &c.; that at the time when, &c., the defendant was lawfully passing along and over the track of the road, on said street, a train of cars propelled by steam; that the plaintiff, notwithstanding she was at the time when, &c., deaf, (a fact wholly unknown to the defendant,) placed herself carelessly and recklessly on the track of the railroad on said street, and was carelessly and recklessly passing along and over the track of said railroad, when she might and ought to have passed along that portion of said street not occupied by said track; that at the time when, &c., the defendant gave the usual signals, by ringing a bell, &c., and the plaintiff was in the apparent act of getting off the track, so as to induce the belief on the part of the defendant's servants, in charge of the train, that the plaintiff had cleared said track, until it was too late to stop the train; by means whereof the plaintiff, by her own wrongful act, contributed to the injury complained of. 3. That the plaintiff, by her own carelessness and recklessness, contributed to the injury complained of, without any recklessness or gross neglect on the part of the defendant. 4. That the plaintiff, at the time when, &c., by her own wrongful act, contributed directly to the injury complained of.

There was a reply of general denial.

It is urged that the complaint was not sufficient, because it did not allege that the injury occurred "without the fault" of the plaintiff—the averment "without negligence on the part of the plaintiff," not being equivalent thereto.

If the proposition thus stated were conceded, it seems to us that it might not necessarily follow that the complaint was bad; for not merely negligence, but recklessness in the management of the engine is alleged to have caused the injury. In such a case it would remain to ascertain whether the plaintiff need aver or prove that she was without fault. This question is also presented by exceptions to instructions given to the jury, and also by a motion for a new trial, based upon the evidence, and upon its decision, mainly, hangs the fate of this appeal.

A train of cars in motion is likely to do irreparable injury to the person of any one with whom it comes in collision, and its rate of speed may be, and often is, so rapid that, compared with a wagon drawn by oxen, people happening to be in the way have diminished opportunities of escape from hurt. Little attention is required of a driver of oxen to avoid injury to others, and yet the same want of attention to that subject by an engineer in charge of a railroad locomotive would show him to be utterly reckless of consequences, and, indeed, willing to do whatever injury might result. The master who would employ such a servant to discharge a duty of so grave and dangerous a nature is as little impressed with a care for the rights of others as the irresponsible servant whom he hires, and thus empowers to strew the route with broken limbs and death. He can select careful servants, and the law is vastly behind the civilization of this age if it does not hold him responsible for the consequences resulting from a failure to do so.

It is well settled that where the negligence of the defendant is so gross as to imply a disregard of consequences, or a willingness to inflict the injury, the plaintiff may recover though he be a trespasser, or did not use ordinary care to avoid the injury. Recklessness in the management of the

train is such gross negligence as is utterly regardless of consequences. This is alleged in the complaint, and it was therefore sufficient, even though it be conceded that the absence of negligence does not imply the want of fault.

The case was so put to the jury by the instructions of the court that, upon the evidence, the verdict must have been for the defendant, unless the fact of gross negligence by the defendant, evincing a willingness to injure, had been found. We have looked into the evidence upon this subject, and in the opinion of a majority of the court its decided preponderance supports that view. The train was running along a street of a populous village, and the track there was commonly used by the inhabitants as a foot-way. It was a wood train, and its speed was, in the opinion of eight witnesses who saw it, much more than the usual rate, (ten to twelve miles an hour,) and they put it at from twenty to thirty miles per hour. The engineer in charge of it, in putting the speed at ten to twelve miles per hour, is supported by only one other witness. Even that was too rapid for safety, and the rules of the company did not allow it, though it appeared that those rules were usually disregarded. There is no escaping the conclusion that the rate of speed was so great as to show that those managing the train had no care whatever as to who or how many might be killed or injured. They did not even see the plaintiff until a moment before she was struck. There was evidence to the effect that at a speed of 25 to 30 miles per hour the train could not have been stopped nearly so soon as it was. The irresistible inference, therefore, is, considering all the evidence, that the speed was unusual, though not so much as 25 miles per hour, and that such a speed, in a place habitually used by foot-passengers, must be deemed inconsistent with any care for consequences to whoever happened to be in the way. With a verdict, then, clearly right upon the evidence, we should not reverse the case, though we should find that error has intervened in instructions given to the jury.

The jury was instructed that the plaintiff had a lawful right to pass along the street, and if in doing so she was, without her own fault, injured by the defendant's train, in consequence of its careless management, she could recover. This instruction is questioned, and it is argued with much force and ability, that so much of a street as is lawfully appropriated for the purpose of a railway track is no longer subject to common use as a street, and that the corporation had, except at crossings, a right to as strictly exclusive possession of it, as it had to any other part of its road. The question is one of much importance, and ought not to be decided without the fullest argument. The appellee has waived its discussion, however, choosing to rest upon other and impregnable grounds, and we have, as has been already seen, concluded that the verdict cannot be disturbed, even if there were erroneous instructions given. A majority of the court is not, as now advised, readily able to agree as to this instruction, and for this reason no opinion is intimated upon the subject.

In addition to the evidence already stated, it was shown that the plaintiff was deaf; that while walking along the track in the street, the train, going in the same direction, struck her, inflicting the injury; that when she stepped upon the side track she looked both ways, being able to see about half a mile in either direction, and no train was in sight; that she was walking rapidly, and did not afterwards look back; that when injured she was about fifty feet from the point at which she would have left the track, and had walked about two hundred feet upon the side track, and a few rods upon the main track.

The jury was instructed that if the negligence of the plaintiff contributed proximately to the injury, no recovery could be had, unless the negligence of the defendant was so gross as to imply a willingness to inflict the injury; that if the plaintiff was deaf at the time, and placed herself so near the track as to endanger her personal safety, that was negligence, and if it directly contributed to the injury she

could not recover, unless it was found that there was gross negligence on the part of the defendant, evincing a willingness to do the injury; that if deaf when she placed herself upon the track, then ordinary diligence required her to use her other faculties to guard against danger, and an observation previous to the injury would not be sufficient, unless so recent as to preclude any reasonable probability of danger.

The following was also given: "The persons in charge of the train, in the absence of any actual knowledge, had the right to suppose that the plaintiff was in possession of her ordinary faculties, including her sense of hearing, and that she would avoid the approaching train if the ordinary signals were given, and if, while indulging in this fair presumption, in good faith, the train had approached so near to the plaintiff that it was impossible to stop it, then the mere absence of an effort to do that which would have been unavailing, cannot charge the defendant, *unless the rate of speed of such train was such as to amount to gross negligence, and to imply a willingness to inflict the injury on the part of the defendant.*"

The words in italics were excepted to by the defendant, who had asked the other part of the instruction to be given. The modification was, perhaps, unnecessary, especially as the same thing had already been given, and without it the instruction as asked was correct. But there was no error in adding the matter objected to. It was good law, and applicable to the evidence, and was, besides, well calculated to guard the jury against possible misapprehension.

The judgment is affirmed, with one per cent. damages and costs.

GREGORY, J., having been of counsel, did not sit in this case.

*R. Jones, S. A. Huff,* and *B. W. Langdon,* for appellant.
*D. McDonald* and *A. G. Porter,* for appellee.