RIEDEL et al. v. WEST JERSEY & S. R. CO.

(Circuit Court of Appeals, Third Circuit. February 21, 1910.)

No. 68 (1,274).

**1. NEGLIGENCE (§ 33\*)—DANGEROUS PREMISES—TRESPASSERS.**

Though the owner of premises is not bound to guard or protect a trespasser from dangers lurking thereon, he is liable for an injury to the trespasser, if willfully inflicted.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 45–47; Dec. Dig. § 33.\*]

**2. ELECTRICITY (§ 15\*)—ELECTRIC THIRD RAIL—INJURY TO TRESPASSERS.**

Defendant's railroad was equipped with the third-rail electric system; the rail carrying the power being similar to and parallel to the other rails. The rail was not covered or protected, except at crossings and stations, and normally carried 675 volts, which was sufficient to injure or kill a person coming in contact therewith. Plaintiff was between seven and eight years old, and while playing in the back yard of the house of friends he was visiting, which abutted on the right of way, was attracted by flowers growing on the far side of the rails, whereupon plaintiff's companion opened the gate in the right of way fence and started to pluck the flowers. Plaintiff in some manner fell on the rail and was shocked and burned, receiving permanent injuries. *Held,* that there was no implied invitation or license by defendant to children to enter the premises, and that defendant owed plaintiff no duty to cover the rail, nor did the facts show willful injury.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 15.\*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by Louis Riedel, by his father and next friend, John M. Riedel, and John M. Riedel in his own right, against the West Jersey & Seashore Railroad Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

See, also, 170 Fed. 816.

Evans and Forster, for plaintiffs in error.

John Hampton Barnes, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. The writ of error in this case brings up from the court below a record disclosing the following facts:

Louis Riedel, who by his father and next friend brought suit in the court below, was a boy between seven and eight years of age, and was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

permanently injured by falling across the electric third rail of the West Jersey & Seashore Railroad Company, the defendant.

The day the injury occurred, he had been taken by his parents from Philadelphia, where they resided, to spend the day with some friends, the yard of whose house abutted against the line of the right of way of said defendant company, just above the village of Westfield, N. J. The right of way of the defendant company near this point, as well as elsewhere, was fenced with a three-strand wire fence, about four feet high, but at the premises in question there was a picket fence dividing the same from the right of way of the defendant company, about five feet in height, which served as part of the line fence of said company, the wire fence coming up to and ending at each end of this picket fence. In this picket fence was a gate opening onto the defendant's right of way.

The defendant company was originally chartered as a steam railroad, but, by the revision of the act of the Legislature of New Jersey concerning railroads, in 1903, the power was conferred upon it to substitute for steam any other motive power which it might deem best adapted to the economical operation of its railroad, and to use such devices and appliances for conducting and distributing power as might be required. Accordingly, at the time of the accident, and for a considerable period prior thereto, the company had installed an electric system for the operation of its road, the electricity being conveyed from the power house through what is known as a "third rail." This rail was situated between the two tracks upon which the cars traveled, but was in close proximity to the rail on one side and ran parallel therewith. It was in all respects like the rail which carried the cars and was without cover or protection of any kind, so that, to a casual observer, there was nothing to distinguish it in appearance from the other rails. The current of electricity carried by this third rail was normally 675 volts, a charge sufficient to seriously injure or even destroy the life of any one coming in contact therewith. This road ran entirely across the state of New Jersey, from Camden to Atlantic City, a distance of some 60 miles. At stations and road crossings, the third rail was covered, so that persons using said stations and crossings were protected therefrom; but, with these exceptions, throughout the entire length of the road, the third rail was uncovered.

On the day of the accident, the plaintiff, Louis Riedel, with two companions of about the same age, a boy and a girl, were playing together in the back part of the lot above described. What then occurred is thus stated:

"Looking through the fence, they saw and were attracted by some flowers growing on the other side of the rails, and went to the gate to open it. Finding it fastened, the plaintiff's companion, as he testified, 'put a nail or a piece of wood, then pulled it out again, and it came open.' Having thus unbolted the gate, the two started to pluck the flowers. The first boy crossed the tracks in safety, but the plaintiff fell, apparently having tripped over something, and, coming in contact with the third rail, was shocked and burned by the electric current, sustaining severe and permanent injuries."

Upon these facts, the court directed a verdict for the defendant, and upon exceptions to this charge of the court, the case comes before us

upon two assignments, alleging error in this action of the court. The facts are simple and undisputed, and the single question for our determination is, whether or not the defendant company owed a duty to the plaintiff to use such care in guarding and protecting this third rail as would have prevented the injury which happened to him, or, as more generally put by the defendant—is a property owner, who maintains on his premises a dangerous agency in the proper exercise and use of his premises, responsible to a child trespassing thereon who is hurt by contact with such agency, if there is nothing about it to entice or attract him, and where the owner has done nothing to invite such trespasser on his premises, or has any reason to expect that he will come upon them?

The exceeding danger presented by the "third rail," which has recently come into use in the operation of important electric roads, when such rail is uncovered and exposed, justly challenges our attention. The character, however, of this dangerous and death-dealing agency must not be allowed to obscure the well-settled principles by which the duty of the owner of premises, upon which such dangerous agency or instrumentality is situated, with respect thereto, is to be determined.

The plaintiff was a trespasser, and it must therefore appear, in order that he may recover from the defendant, that his case is an exception to the ordinary and well-settled rule, that the owner of premises owes no duty to a trespasser, whether an infant or adult, to keep such premises in a nonhazardous condition, or to protect him against concealed dangers lurking thereon. The contention of plaintiff's counsel, urged with much ability and insistence, is that the extreme danger arising from the exposed third rail was a concealed danger, by reason of the fact that the third rail, in size and appearance, was undistinguishable from the other rails by a boy of the immature age of the plaintiff, there being no evidence that he had been informed or in any way made aware of the character of such rail. It is therefore contended that the maintenance of this instrumentality argued such a wanton recklessness as to consequences on the part of the defendant, and willingness to inflict injury, as would render it liable to the plaintiff, even though he were technically a trespasser. Of course, though the owner of premises may owe no duty to guard and protect a trespasser from dangers lurking thereon, he has no right willfully to inflict injury on such a trespasser. It is on this ground that the so-called "spring gun" cases have been decided. Whether the conduct of such owner, in maintaining a dangerous situation or instrumentality on his land, would amount to such a wanton and reckless indifference to consequences as would imply a willingness to inflict an injury on a trespasser, must depend upon the circumstances of the case: There is a class of cases well known, in which it is held that a railroad company is liable, where its servants in charge of moving trains willfully run down a person in full view upon its tracks, even though they have given warning of their approach, and even though such person be a trespasser. Such cases serve to illustrate the proposition, that one may not willfully injure even a trespasser upon his premises. Of this class are the cases referred to by the counsel for plaintiff. Chicago

Transfer R. Co. v. Gruss, 200 Ill. 195, 65 N. E. 693; Chicago Transfer R. Co. v. Kotoski, 199 Ill. 383, 65 N. E. 350; Lafayette, etc., R. Co. v. Adams, 26 Ind. 76.

But these decisions do not support the contention, that the mere maintenance of a dangerous instrumentality upon one's land for ordinary and lawful purposes, and incident to its natural use in carrying on a lawful business, makes such a one a willful tort-feasor with respect to a trespasser who has come within its danger. In the present case, there was nothing willfully injurious in the defendant's installing upon its own premises this third rail, dangerous though it was to those who came in contact with it, for the lawful purpose of operating an electric railway system, nor can we say from that fact alone, or from any other evidence in the case, that the nonprotection of the third rail was such a wanton and reckless indifference to consequences as would legally imply willfulness and intentional wrong, as to any injury that might be occasioned thereby, whether that injury was suffered by an infant or an adult. There is nothing in the case from which the purpose to inflict injury can be inferred, as in the "spring gun" cases, or a willful indifference to consequences, as in the railroad cases above referred to. One's right to maintain for a lawful purpose a dangerous appliance or instrumentality on his own premises, is not limited or qualified by the degree in which it may be dangerous.

The precise question here involved has recently been decided by the Supreme Court of New Jersey, in the case of Sutton against the defendant in the present case. 73 Atl. 256. The facts were practically the same. The action was for the death of a child 13 years of age, who, in crossing the tracks of the defendant at a point other than a public crossing or station, came in contact with a third rail charged with electricity, and was killed. It was conceded that the decedent had no legal right to go upon defendant's premises at the point where he crossed the tracks. The court below sustained a demurrer to the declaration, and gave judgment for the defendant. The Supreme Court affirmed that judgment, saying:

"The real distinction running through the cases seems to me to be this:

"Where the landowner in the development of his property, and solely for the purpose of obtaining a more beneficial user therefrom, installs upon it an appliance which will be dangerous to people coming in contact with it, he is under no obligation to trespassers to so guard it that they shall not be injured; but where he installs the appliance for the purpose of inflicting injury upon the persons or property of those who unlawfully come upon his land, he is liable when harm is inflicted by such appliances. * * *

"The right of the plaintiff, therefore, depends upon whether the defendant company owes to a trespasser upon its right of way the duty of using care either to safeguard its third rail in such a way as to prevent him from coming in contact with it, or else of giving him notice that such contact is dangenerous to life and limb. The rule is settled in this state that a landowner is under no obligation to a trespasser to keep his premises in a nonhazardous state; that, as to him, the landowner's sole duty is to abstain from acts willfully injurious. And this rule is applicable whether the tresspasser is an infant or an adult.

"In the case in hand, the defendant installed the electric third rail system for the more complete beneficial use of its property. In doing so it acted under legislative sanction. * * *

"Having the lawful right to install this system for the operation of its road, it was within the protection of the rule which we have been discussing. and was under no obligation to the deceased except to abstain from acts willfully injurious to him. That it failed in this obligation is not suggested in the declaration."

There is nothing in the record to bring this case within the ratio decidendi of the so-called "turntable" cases, and other cases decided on the same principle, to which the plaintiff refers. In the present case, the railroad property was guarded by a statutory fence, and the gate through which the plaintiff and his companion entered upon the railroad premises was fastened by a bolt, which had been withdrawn by them. There is no evidence that there was anything to allure or entice children to go upon the railroad premises at the place where the accident occurred, and none that children had ever been in the habit of entering upon the railroad premises through this gate, or otherwise, for play or amusement, or for any other purposes. The motive of the children in attempting to cross the railroad, as testified by the children themselves, was to gather flowers growing on the other side of the railroad property. The present case, therefore, differs obviously from the cases referred to, the decisions in them being founded upon the maintenance of a dangerous appliance or object on the owner's premises which presented enticement and allurement to children, and to which they were in the habit of resorting, to the knowledge of the defendant. There was thus an implied invitation or license to the children to enter upon the premises, by reason of which they were divested of the character of trespassers, and there was imposed upon the defendants the duty of exercising reasonable care for their protection. Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745; Snare & Triest Co. v. Friedman, 169 Fed. 1, 94 C. C. A. 369; Cooke v. Midland Great West Ry. of Ireland, L. R. App. Cas. 1909, pt. 2, 229.

However deplorable these cases may be, we cannot, in order to remedy them, disregard those well-settled principles which have heretofore regulated and limited the restraint imposed upon landowners in the use of their own premises. If the comparatively recent use of the third rail has developed dangers to the public at large hitherto unknown, the Legislature of the state may feel called upon to exercise its undoubted police power, by imposing upon the users of these instrumentalities such precautions in their use as will measurably afford protection to those coming within their danger.

The judgment below is affirmed.