The State v. James Nevils, Appellant.—51 S. W. (2d) 47.

Division Two, June 10, 1932.

*E. P. Dorris, Homer Rinehart* and *C. H. Jackson* for appellant.

*Stralton Shartel*, Attorney-General, and *Silas E. Garner*, Special Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Defendant appeals from a verdict and sentence of the Circuit Court of Oregon County, Missouri, finding him guilty of manslaughter and fixing his punishment at five years in the penitentiary. He was charged with murder in the second degree by information filed in the Circuit Court of Howell County. But appellant took a change of venue, and when the case was called for trial in Oregon County, he disqualified the regular judge of the circuit. Honorable E. M. Dearing was then called from another circuit to preside at the trial.

At the time of the offense, September 26, 1930, appellant was constable of Willow Springs township in Howell County, and he was on the outskirts of Mountain View, in that county, looking for a man named Coburn for whom a warrant charging a felony had been issued in Texas County. The man killed was Bus Bolerjack, who, about eight o'clock in the evening of September 26, 1930, was driving his two-door Chevrolet sedan from Mountain View to his home at Cabool, in Texas County. Bolerjack had with him his wife, Ruth Bolerjack, and his cousin, Edna James. That afternoon they had attended the funeral of Bolerjack's grandmother in Mountain View. With appellant, at the time of the shooting, were Mel Vollmer, a deputy constable at Cabool, and W. H. Booker, a city marshal of Cabool. These Texas County officers had brought with them the warrant for the arrest of Coburn, had it duly endorsed by a Howell County justice of the peace and had enlisted the aid of appellant and other Howell County officers in the search for Coburn.

United States Highway No. 60 skirts Mountain View, but what is called the old highway runs into the town, and, near its outer edge, the two roads meet. At the small angle junction was a filling station, and there the three officers, appellant, Constable Nevils of Willow Springs, and Deputy Constable Vollmer and City Marshal Booker, both of Cabool, parked their car. They planned to stop automobiles coming out of Mountain View and to search for Coburn, the accused. He was supposed to be riding in a Ford coupe. They had scarcely stopped their car when they saw the headlights of another car coming out of Mountain View along the old road toward Highway 60. This later proved to be Bolerjack's Chevrolet coach. Vollmer and Booker, testifying for the State, stated that they remained in their car until after the shooting, and that appellant Nevils got out, carrying a searchlight in his left hand and his 45 calibre automatic Colt's pistol in his right hand. Appellant admitted that he left the automobile, carrying the searchlight and pistol, and walked into the old highway to halt the on-coming car. But he also testified that Vollmer and Booker stepped from their car and took their stand upon higher ground near the apex of the angular junction of the highways.

Mrs. Bolerjack and Mrs. James were in the back seat of the Chevrolet coach which Bus Bolerjack was driving. They testified

that as the car approached U. S. Highway 60, along the old road, a man stepped into the road, in the path of the car, flashed a light and almost at the same moment began shooting. He fired four or five shots. One, pierced the radiator, another the right-hand door, a third the right rear window frame and fourth struck the hub of the right rear wheel. The man with the pistol was so close that Bolerjack swerved the car to avoid hitting him. The women thought that they were about to be held up and they hid their rings in their shoes. Bolerjack stopped his car and appellant Nevils, whom the women identified as the man in the road who had done the shooting, opened the left-hand door near Bolerjack, the driver, and ordered the inmates to stick up their hands. They did not obey and appellant said: ''I said stick 'em up. I guess you will stop the next time any one tries to stop you.'' Vollmer and Booker then approached the car. They identified the Bolerjacks and Mrs. James, whom they knew from Cabool, and informed appellant that he had stopped the wrong persons. Appellant then ordered the Bolerjacks to drive on. But Bus Bolerjack fell fainting in his seat in the car and was carried back to the home of his father in Mountain View. He had a bullet wound in his right side near the hip. The course of the bullet was through the bowels to a lodging place near the left hip. Bolerjack died from the wound at a hospital in Springfield, Missouri, on October 2, 1930, six days after the shooting. The bullet was found upon postmortem examination and was described by State's witnesses as of 45 calibre. Sheriff C. R. Kelley, of Howell County, testified that, a day or two after the shooting, appellant, when questioned by the prosecuting attorney, stated that he and not Vollmer or Brooks, did the shooting. Other witnesses testified that appellant made a like admission on the night of the shooting at the home of Bolerjack's father.

Appellant, on his own behalf, testified that he stepped into the road and displayed the flash light when Bolerjack's car was distant a quarter mile. He also testified that, when Bolerjack's car came within hearing distance of him, he yelled to the occupants: ''Halt that car. You are under arrest.'' The car then increased its speed and made a sudden drive for him and he had to jump aside. Appellant admitted that he fired four shots but he stated that these were directed at the tire casings at the rear of the car. He also testified that about eight shots in all were fired and that while he was firing, other shots came from the high ground where Vollmer and Brooks were standing. They denied that they did any shooting or that they left their car until after the firing had ceased. Other witnesses, on behalf of appellant, testified that they had examined the scene of the tragedy and the bullet hole in the right front door of Bolerjack's car. The course of the bullet from without to within the car ranged downward, and, in their opinion, the shot could not have

been fired from the place where appellant was said to have been standing. But it could have been fired from the higher land where Vollmer and Brooks were said to have been. Four recovered bullets were exhibited. Witnesses for the State testified that all these were from a 45 calibre pistol such as appellant had used. Witnesses for appellant testified that two of the bullets had been fired from a weapon of smaller calibre.

I. The trial court gave instructions on murder in the second degree and manslaughter. Appellant assigns as error the giving of these instructions. We will examine first the manslaughter instruction, No. 5. It informed the jury that, on September 26, 1930, appellant was constable of Willow Springs township in Howell County; that he held a warrant issued by a justice of the peace of Texas County for the arrest of Charles Coburn, charged with a felony; that this warrant had been indorsed by a justice of the peace in Willow Springs township, Howell County, and that, by this warrant, appellant was authorized to use all necessary force to arrest Coburn at any place in Howell County, "even unto the taking of the life". of Coburn. The instruction then proceeds to say: "however, the court instructs you that before the defendant would be authorized by the said warrant to shoot into the automobile being driven by the deceased, Bus Bolerjack, it was the duty of the defendant to exercise the care and caution which would be exercised by a reasonably careful and prudent man under similar circumstances to ascertain whether the man in and driving said automobile was the said Charles Coburn, and if you believe and find from the evidence in the case, beyond a reasonable doubt, that the defendant did not exercise such care and caution, and did carelessly and recklessly, without making an investigation which would have been made by a careful and prudent man under similar circumstances, did in the county of Howell in the State of Missouri, carelessly and recklessly shoot into said automobile with a 45 calibre automatic pistol and wound the said Bus Bolerjack, from which wound the said Bus Bolerjack on the 2nd day of October, 1930, in the county of Greene and State of Missouri, died, then the defendant is guilty of manslaughter whether or not he intended to kill the said Bus Bolerjack."

Appellant assails this instruction upon the ground that it failed to define culpable negligence correctly because it did not require the jury to find that the imputed carelessness and negligence were incompatible with a proper regard for human life, and that it merely defined ordinary negligence actionable in a civil suit. Appellant cites in support of his attack upon the instruction: State v. Millin, 318 Mo. 553, 300 S. W. 694; State v. Baublits (Mo.), 324 Mo. 1199, 27 S. W. (2d) 16; State v. Melton (Mo.), 326 Mo. 962, 33 S. W. (2d) 894. In the Millin case the manslaughter, of which the defendant

was convicted, arose out of the death of a woman who was struck by defendant's automobile while she was standing in a safety zone on a much-traveled Kansas City street on a misty night. In that case, culpable negligence was defined as "the omission to do something which a reasonable, prudent and honest man would do, or the doing of something which such a man would not do under all circumstances surrounding each particular case." Obviously this instruction merely defined ordinary negligence, supporting an action for damages, and the judgment was properly reversed and the cause remanded for the error in this instruction.

The defendant in the Baublits case was a deputy game warden. He shot and killed a hunter who was deaf and who did not hear defendant's orders to show his license, but kept moving in pursuit of game. Defendant contended that he fired three shots stra'ght up in the air to attract the hunter's attention and had no intention of hitting him. An instruction on culpable negligence given in the Baublits case was very similar to the instruction in the Millin case (supra), and caused a reversal of the sentence and judgment. The court in its opinion said:

■ "Culpable negligence is tantamount to gross carelessness or recklessness incompatible with a proper regard for human life." [State v. Baublits (Mo.), 324 Mo. 1199, 27 S. W. (2d) 16, 1. c. 21.] Appellant in the instant case urges that the manslaughter instruction given did not describe culpable negligence as gross carelessness incompatible with a proper regard for human life, and therefore that it was a reversible error.

In the earlier case of State v. Emery, 78 Mo. 77, the defendant was convicted of manslaughter for the death of a friend, killed by a bullet from a pistol accidentally discharged while the defendant was playfully brandishing it. Instructions given in that case were assigned as error because they did not contain the word "culpable." The court in its opinion said (78 Mo. 1. c. 80) : "It was unnecessary that the instructions should contain the word 'culpable;' it was sufficient that they conveyed to the minds of the jury other and equivalent words expressive of the idea of culpability." So, too, in the instant case, it was unnecessary that the assailed instruction should define culpable negligence as incompatible with a proper regard for human life, if it conveyed to the minds of the jury the same idea in other words. ■ If a synonym of the absent phrase is essential to the correctness of the instruction it may be found in the adverb "recklessly" which is in the instruction. "Recklessly" implies a greater degree or a grosser form of negligence than want of ordinary care. The Kansas City Court of Appeals in the case of Plummer v. Kansas City, 48 Mo. App. 482, 1. c. 484, makes comments on the noun "recklessness" which are equally applicable here to the adverb "recklessly." The court in that opinion by ELLISON, J.,

said: "Recklessness sometimes includes carelessness, but it is much more than carelessness, it implies wilfulness, and when applied to characterize an act done to another person it is wantonness. To be reckless is to be utterly regardless of consequences. [Lafayette, etc., Ry. Co. v. Adams, 26 Ind. 76; State v. Bridgman, 94 N. C. 888.] Recklessness, instead of being merely the want of ordinary care, is more nearly the want of *any* care. And so it is understood in common speech. 'Reckless' is defined in the 'Century Dictionary' as: 'Not recking of consequences, desperately heedless, as from folly, passion or perversity, impetuosity, or rashly adventurous.

" ' ' "I am one, my liege, whom the vile blows and buffets of the world have so incensed that I am reckless what I do to spite the world. Sha. McB., III.-I-110." ' " Reference is also made to O'Brien v. Loomis, 43 Mo. App. 29, 1. c. 34, where distinction is made between ordinary negligence and reckless conduct.

In our opinion, the manslaughter instruction did convey to the minds of the jurors the correct idea of culpable negligence, applicable to the facts of this case, and it is not subject to the criticisms made. It did not define culpable negligence as ordinary negligence as the trial court did in the Millin and Baublits cases. It went further and directed the jury to find appellant guilty of manslaugter provided the jury found beyond a reasonable doubt that appellant did not exercise the care and caution of a reasonably careful and prudent man to ascertain whether the fugitive Coburn was driving the car fired upon before he carelessly and recklessly discharged his 45 calibre automatic pistol into the car. A major difference between the facts of this case and other manslaughter cases in which automobiles were carelessly driven or weapons were accidentally but recklessly fired is that, in this case, appellant intentionally discharged his pistol at Bolerjack's car in reckless disregard of the fact whether the hunted Coburn or some one else was in the car. It comports with reason and sense to say that an intentional firing of four shots from a pistol of heavy calibre at a moving automobile in which there must be at least one person, a driver, is "incompatible with a proper regard for human life" whether the quoted phrase is in the manslaughter instruction or not.

Manslaughter is thus defined by the statute (Sec. 3988, R S. 1929): "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." The manslaughter instruction in this case is in accord with th's statutory defnition. Further support of the instruction may be found in this statute and in other instructions given We have seen that the State submitted the case to the jury upon instructions for second degree murder and manslaughter. Appellant, by one instruction given at his instance, presented the defense of justifiable homicide. By this

instruction the jury was told to acquit appellant if it found that Bolerjack drove his automobile in a "reckless manner," and attempted to drive it over appellant, with the intent to do appellant great bodily harm, and if the jury also found that appellant attempted to arrest Bolerjack for this offense, and that "appellant used no more force than was reasonably necessary to then and there accomplish his arrest." One of the modes of justifiable homicide defined in the statute (Sec. 3985, R. S. 1929), is "when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed."

By another instruction given by the court at the instance of appellant, the jury was directed not to find appellant guilty of murder if the jury found that although appellant shot Bolerjack, yet that appellant shot into the automobile for the purpose of stopping it and not with any intent to kill Bolerjack. Quite clearly the jury was guided by this instruction in arriving at its manslaughter verdict. The point and the purpose of these references to appellant's instructions are to make clear that from every point of view the firing of the pistol at and into the automobile was intentional. The careless and reckless conduct of appellant lay in his so doing without first having used care and caution to ascertain whether the fugitive Coburn was in the car. We are of opinion that the question of appellant's guilt of manslaughter was properly submitted by Instruction 5.

■ II. Appellant assigns as error the testimony of the witness Broyles. The later was a night watchman at Cabool. On the day of the shooting appellant and Broyles, in a conversation arising out of the impending pursuit and arrest of the fugitive Coburn, discussed the habit of some auto drivers to refuse to stop when ordered by officers so to do. Broyles quoted appellant as saying: "I have made up my mind that when I say 'stop,' I mean 'stop.'" It is doubtful whether this statement could be held to be reversible error. But the assignment should be ruled against appellant for the reason that his objections at the trial went only to the form of the questions.

■ III. Appellant assigns as error the action of the trial court in permitting two jurors to remain in the panel of thirty jurors qualified to try the cause. On their *voir dire* examination the two jurors testified that they had formed opinions based on newspaper reports of the offense with which appellant was charged. In answer to questions by the court they answered that they could try the case on the law and the evidence. Section 3671, Revised Statutes 1929, provides: "It shall be a good cause of challenge to a juror that he has formed or delivered an opinion on the issue or any material fact to be tried, but if it appear that such opinion is founded only on

rumor and newspaper reports, and not such to prejudice or bias the mind of the juror he may be sworn.'' From the record made, it does not appear that appellant's rights were prejudiced by the action of the court in not sustaining his challenges to these two jurors. It may be added that, while appellant was entitled to thirty qualified jurors, neither of the two jurors challenged sat in the case. This assignment is ruled against appellant.

■ IV. Appellant criticises two instructions given by the court at the instance of the State on murder in the second degree. As appellant was found guilty of manslaughter, a lesser offense, the complaints against the second degree murder instructions, even if well founded, are not cause for a reversal.

V. Finding no prejudicial error, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.