STATE v. WILLIAM BRADLEY, Appellant.—No. 38845.—179 S. W. (2d) 98.

Division Two, April 3, 1944.

*Frank E. Mathews* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

BOHLING, C.—A jury found William Bradley guilty of murder in the second degree in killing his wife, Mollie, and fixed his punishment at fifteen years' imprisonment.

Bradley's wife had left him twice and was prepared to leave again the morning she was killed. He had told her mother that if she left him again he would kill her. He had told her brother that if she left again he would get himself into serious trouble. She had admitted to her husband that she had been going out with a dining car waiter who had given her some luggage. On the trial of the case Bradley admitted killing his wife with a shotgun but claimed the shooting

was accidental. On this appeal he does not dispute that there was evidence from which the jury could find him guilty of murder in the second degree but contends that there was error in the submission of the case prejudicial to his being fairly tried.

The information charged and the court submitted to the jury whether the defendant was guilty of murder in the first degree, murder in the second degree or manslaughter. The court undertook to tell the jury to acquit the defendant if they found the killing to have been accidental. The defendant does not complain of the given manslaughter instruction but contends that the court should have instructed the jury on manslaughter through culpable negligence. His theory is that if the jury had been so instructed they might have found him guilty of manslaughter rather than of murder in the second degree.

Bradley and his wife were servants in the home of Mr. Charles Rice. They occupied the rooms on the third floor of his home. As a part of his duties he fed the birds in the morning and shot predatory birds. His version of the killing is that on the morning of March 8, 1942 he saw a hawk in a tree outside their third story living quarters and pursuant to his previous custom and instructions decided to shoot it. Mr. Jay Rice and his wife were in the dining room and he reported the presence of the hawk to them and asked Mr. Rice if he might use his gun. Mr. Rice told him to get his (Rice's) gun from the closet in his room. Instead his own twelve-gauge shotgun was in the hall next to the bathroom on the third floor and he went to the basement and obtained a shell he had left in a cabinet for his own gun. The sole of one of his shoes had come loose from the toe and bent back under his foot. He loaded his gun and as he walked across the floor stumbled forward five or six feet because of the defective sole and the gun struck or went inside the bathroom door and fired, killing his wife as she stood in front of the lavatory in the bathroom—the door being open three or four inches. He was of the opinion that it was easier to shoot the hawk from the bathroom window rather than from the bedroom window or elsewhere. This was his version of the occurrence as he testified to it in his own defense. His testimony and the version he gave the officials differed in that to them the impression was given that the gun went off outside the bathroom door, without striking it, and the shot went through the three-inch space of the open door. Also, he first said he did not see his wife in the bathroom but later saw her just as the gun went off. The shot went through her left chest about two inches below the tip of her left shoulder, in a line with the front of her armpit, downward and backward to her spine.

The defendant's theory is that his evidence compelled the giving of an instruction on manslaughter through culpable negligence because if he intentionally shot his wife he did so with malice and

784

premeditation and, therefore, could not have been guilty of manslaughter in intentionally killing his wife without malice or premeditation, the distinguishing characteristic of manslaughter. State v. Pillow, 169 S. W. (2d) 414. The defendant says that the carrying of a loaded shotgun in the house, in haste, with his finger on the trigger and the safety off and wearing a defective shoe was evidence from which the jury could have found such a recklessness ▆▆ and carelessness on his part as was utterly incompatible with the safety of others, or manslaughter through culpable negligence. The difficulty with the defendant's position, the facts and prior instances upon which he relies, is that his own version of the occurrence does not hypothesize or contain the facts essential to compelling a submission of manslaughter through culpable negligence. Later, after he got to the window and in a position to do so, he may have intended to fire the gun. 26 Am. Jur., Sec. 211. But, when it went off he did not intend to fire it. The case is not, therefore, comparable to the instances in which a defendant intentionally fires a gun to scare but not intending to hit or kill. State v. Markel, 336 Mo. 129, 77 S. W. (2d) 112; State v. Beckham, 306 Mo. 566, 267 S. W. 817. He said all the time that he did not see his wife, at least until he stumbled, and so the case is not comparable to the instances of a defendant's pointing what he thinks is an unloaded gun and pulling the trigger (State v. Morrison, 104 Mo. 638, 16 S. W. 492) nor to the instance of one brandishing a loaded revolver in a saloon after he has been warned of the danger. State v. Emery, 78 Mo. 77. The test in that type case is knowledge, actual or implied. State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877; State v. Nevils, 330 Mo. 831, 51 S. W. (2d) 47. When the defendant's argument is fully analyzed he is driven to reliance upon the wearing of the defective shoe, one likely to cause him to stumble while carrying a loaded gun, and while such conduct might constitute simple negligence or demonstrate that the shooting was accidental it is certainly not such wanton, reckless conduct as to evince an utter disregard for human life. Annotations 5 A. L. R. 603; 23 A. L. R. 1554 and State v. Ruffin, 344 Mo. 301, 126 S. W. (2d) 218. In this case, as the defendant argues, if the defendant intentionally shot his wife he did so with malice as the jury found. But if he did not intentionally shoot her in such circumstances as to reduce the shooting to manslaughter (State v. Ryland, 324 Mo. 714, 25 S. W. (2d) 109), he shot her accidentally and should have been discharged.

▆▆ Defendant complains of the italicized words in the instruction on accidental killing,* which read:

---

*Consult Sec. 4380, R. S. 1939; State v. Logan, 344 Mo. 351, 357, 126 S. W. (2d) 256, 260[12], 122 A. L. R. 417, 423 and citation.

The instruction appears based on the civil law of negligence (Wright v. Quattrochi, 330 Mo. 173, 179[2], 49 S. W. (2d) 3, 5, 6), involving a different legal responsibility.

"The Court instructs the jury that if you believe and find from the evidence that the defendant at the time and place mentioned in the evidence had a shotgun in his hand or hands, and *without the fault or intentional act of the defendant* said shotgun was accidentally discharged and produced the death of the deceased, then you will find the defendant not guilty. The burden is upon the state to prove beyond a reasonable doubt that said shooting was not accidental." He says this, in effect, tells the jury he was not to be acquitted even though he accidentally shot his wife if they found he were at fault, to blame or negligent, in any degree, no matter how slight. Ordinarily, "or" is used as a disjunctive participle, marking an alternative corresponding to "either," as "either this or that." Consult Rust v. Missouri Dental Board, 348 Mo. 616, 627[3], 155 S. W. (2d) 80, 85[10]; State v. McGee, 336 Mo. 1082, 1101[11], 83 S. W. (2d) 98, 110[42] and authorities cited. But, the instant disjunctive phrases (separated by "or") are introduced by the preposition "without," used in the sense of, for instance, "free from," "independent or exclusive of," a word of negation; such as "without fear or favor," meaning justly, uninfluenced by fear and uninfluenced by favor; "without fear or compulsion" "without defalcation or discount" et cetera, a negative alternative, corresponding to "neither," as "neither this nor that." Thus viewed, the instruction conditioned defendant's acquittal upon a finding that his wife's death was occasioned neither by his fault nor by his intentional act. See titles: "or", "without", "fear", Webster's New International Dictionary, Second Edition; The Century Dictionary and Cyclopedia; Words and Phrases; Corpus Juris. Mott v. Kansas City (Mo. App.), 60 S. W. (2d) 736, 741[5]. We understand the State's counsel does not contend the instruction to be a model. They take the position that while the phrase "without the fault" may have no place in the instruction, its inclusion was rendered harmless by the use of the disjunctive "or," resulting in construing the instruction as authorizing an acquittal if the killing were not intentional, no matter if defendant were at fault. We have shown this construction not justified when the disjunctive phrases are introduced by "without" in the circumstances before us. The court submitted the instruction. It conditioned defendant's acquittal, not his conviction. By conditioning an acquittal upon defendant being not at fault, it injected unauthorized conditions to the defense of an accidental homicide and precluded a proper consideration of said defense. Where there is evidence warranting a finding that a homicide was accidental, we have said "the question should have been submitted to the jury as a part of the law of the case whether an instruction thereon was requested or not" (State v. Crowley, 345 Mo. 1177, 1182(I), 139 S. W. (2d) 473, 475[1, 2]); which means a proper instruction. The instant negative conditioning of defendant's acquittal implied not only the

converse that defendant was to be convicted if he intentionally shot his wife but also the converse that defendant was to be convicted if he were to blame, however slightly, in the killing of his wife. From what we have said, the only authorities* cited by the State (going to the stated point that if the words "without the fault" were subject to the construction defendant places upon them, it was his duty to request the court to clarify it) are not applicable because the fault here is one of affirmative misdirection and not one of mere nondirection or poorly phrased proper direction.

The foregoing rules the issue as presented. It may be argued that the verdict of second degree murder shows the error to be harmless as defendant was found guilty of a willful, premeditated and malice aforethought killing, negativing an unintentional or accidental killing. The situation here is more aggravated than in State v. Ida Aitkens, No. 38730, 3g2 Mo. 746, 179 S. W. (2d) 84, handed down herewith. What is there said fully covers all that need here be said. The reader is referred to State v. Aitkens for the reasons sustaining prejudicial error.

We shall mention the other issues presented briefly, some involve errors but possibly not sufficient in themselves to call for a new trial.

██ Complaint is made against the instruction on the credibility of the witnesses in that it authorized the jury to disregard, rather than to weigh before rejecting, the testimony of a witness whom the jury believed willfully swore falsely to material facts. Without setting out the objectionable portion of the instruction, it is subject to the criticism set forth in the discussion found on the issue in State v. Willard, 346 Mo. 773, 781 et seq., 142 S. W. (2d) 1046, 1051 et seq., citing authority. We do not say the error was prejudicially erroneous.

██ We are not impressed with the criticism of the instruction on good character. The court instructed on murder in the first degree, murder in the second degree and manslaughter, the charge being murder in the first degree. The instruction on good character referred to defendant's "guilt or innocence of the charge in this case" and defendant says the jury were thus precluded from considering his good character in connection with the instructions authorizing a conviction for murder in the second degree or manslaughter. We think Missouri juries would readily understand defendant's good character was for consideraion in determining the question of his guilt or innocence under all the instructions and not solely the instruction on first degree murder. However, the instruction should be redrafted so as to remove the issue.

██ A witness who had an opportunity to know defendant's voice testified to a telephonic conversation with defendant, after stating,

---

*State v. Gaskins (Mo.), 89 S. W. (2d) 647, 650[8]; State v. Traylor, 339 Mo. 943, 98 S. W. (2d) 628; State v. Raines, 333 Mo. 538, 62 S. W. (2d) 727; State v. Smith (Mo. App.), 16 S. W. (2d) 653.

referring to the person calling him: "He told me it was Bradley; and his voice sounded like the same voice." Defendant's point that there was not a sufficient identification of defendant being the person calling is not well taken. State v. McGee, 336 Mo. 1082, 1096(IV), 83 S. W. (2d) 98, 106[20-24], and authorities.

██ Exhibit C, a photograph, is said not to tend to prove any disputed fact and should have been excluded because of its gruesome nature. The reason assigned seeks the fact. The killing being admitted, the defense was an accident. This photograph tended to establish that the accident could not have happened like defendant ██ claimed to the officers it had happened. It tended to sustain the State's theory that the shooting was intentional and to refute the sole defense that it was accidental. State v. McDaniel, 336 Mo. 656, 669(II), 80 S. W. (2d) 185, 192[4, 5]; State v. Lewis (Mo.), 137 S. W. (2d) 465, 466[2]; State v. Shawley, 334 Mo. 352, 368(III, IV), 67 S. W. (2d) 74, 82[14, 17, 18]; State v. Porter, 276 Mo. 387, 396(III), 207 S. W. 774, 777[4].

The foregoing covers all issues presented that should arise upon a retrial.

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.*, dissent.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.