STATE of Missouri, Plaintiff-Respondent,

v.

Howard SMITH, Defendant-Appellant.

No. 9452.

Missouri Court of Appeals,
Springfield District.

Aug. 9, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dorman L. Steelman, Salem, for defendant-appellant.

BILLINGS, Judge.

Defendant Howard Smith was convicted by a Phelps County jury of the misdemeanor offense of threatening a state's witness in a pending criminal case in violation of § 557.090, RSMo., 1969, and his punishment assessed at a fine of $100.00. We affirm.

The witness, Wanda Leea "Smith", began living with defendant at Rolla, Missouri, beginning in December of 1966.[1] This arrangement continued until sometime in 1968. Following a "separation" she and the defendant resumed living together in August of 1969. On September 15, 16 (his birthday), and 17 of 1970, Wanda and the defendant took a trip to Batesville, Arkansas, Hot Springs, Arkansas, and Branson, Missouri. On September 17th, 1970, a barn owned by relatives of defendant's wife (Ella) burned in Phelps County.

Wanda and defendant ceased living together January 21, 1971. Following his divorce from Ella defendant and Susan Cook —recently divorced from Lawrence Cook —were married in April of 1971. On the anniversary of the barn burning, September 17, 1971, defendant and one Arnold Hayes were charged with the crime of arson in connection with the destruction of the barn.

The preliminary hearing on the arson charge was scheduled for December 23, 1971. Wanda testified that at about 1:30 o'clock a. m. on December 19, 1971, she received a telephone call from defendant's wife, Susan, followed a minute or two later by another call from Susan who turned the telephone over to the defendant. According to Wanda the defendant told her that he had been told she was subpoenaed to testify against him and that she couldn't testify against him—she had to testify for him. Further, "He started asking if I remembered when we went to Arkansas and what the dates were and something about having a birthday song played for him." Wanda said she told the defendant she did not have any idea what he was talking about. At this juncture of the conversation, Wanda related, the defendant said: "Well, I know that you're being subpoenaed for a state's witness to testify against me. You know I can have you killed for two hundred dollars." The defendant also told her that Arnold Hayes had been over

---

1. Wanda Leea had been married to a Bill Guemmer from 1955 until 1967 at which time they were divorced. About a month later she decided she did not care for the name Wanda Leea Guemmer and, according to her, an Arizona lawyer (without the benefit of court proceedings of any type) "changed" her name to Leea Smith. She said "It was a toss-up between Smith and Jones, and I figured Leea Smith sounded better than Leea Jones." In order to avoid further confusion we shall simply refer to her as Wanda.

to see her mother earlier in the evening and that her mother had told Hayes that she did not think that Wanda had "turned them in" but that Wanda was going to be a witness. Hayes had replied that Wanda "may testify at the preliminary hearing but she would never testify at the trial." [2]

The defendant and Susan both denied any telephone calls to or conversations with Wanda on December 19, 1971. The defendant said he did call Wanda shortly after the arson charge was lodged against him in September and told her he wanted her to be a witness for him "so I could prove where I was at." Defendant said Wanda told him "I was an ornery S.B. and she wouldn't help me with anything, and she said she didn't recall where we was at, or—nothing at all, and she was going to another state and she wouldn't help me with nothing." [3]

In this appeal defendant contends that his motion for judgment of acquittal at the close of the state's case and at the close of all the evidence should have been sustained because he was charged under § 557.090 and this offense under the statute is a misdemeanor. Further, that a felony complaint was filed, a preliminary hearing held, and defendant bound over to circuit court where the case was tried as a felony. Defendant argues that since the statute authorizes punishment in the penitentiary, or in the county jail not exceeding six months, or by fine not less than one hundred dollars, or by both such fine and imprisonment, the provision concerning punishment in the penitentiary converts the charged offense into a felony, citing § 556.020, RSMo., 1969, and cases defining various offenses as felonies such as State v. Combs, 301 S.W.2d 529 (Mo.App.1957);

State v. Thomas, 343 S.W.2d 56 (Mo. 1961); State v. Kiddoo, 354 S.W.2d 883 (Mo.1962); State v. Walker, 381 S.W.2d 475 (Mo.App.1964); Wynes v. State, 468 S.W.2d 7 (Mo.1971); and State v. Lomax, 470 S.W.2d 161 (Mo.App.1971). Defendant concedes there are cases interpreting § 557.090 adversely to his contention but suggests such decisions are irreconcilable and that we "should abrogate the prior interpretations of § 557.090 and enunciate a decision which will harmonize" that statute with § 556.020. [4]

■ The transcript does not reflect a felony *complaint* was filed herein, nor does the record contain any reference to a preliminary hearing. We have examined the information filed in the circuit court against the defendant and find it to be sufficient to charge the offense prohibited in § 557.090 and sufficiently apprise the defendant of the crime charged against him. State v. Stanley, 494 S.W.2d 682 (Mo. App.1973). The information does, unnecessarily, include the word "feloniously" together with the statutory terms "wilfully" and "unlawfully" but such surplusage does not render the information defective and would not change the offense from a misdemeanor to a felony. Defendant fails to show any prejudice from the inclusion of this term and we find none.

■ Any alleged conflict between § 557.090 and § 556.020 was reconciled by the Supreme Court of this state shortly after the turn of the century. State ex rel. Butler v. Foster, 187 Mo. 590, 86 S.W. 245 (banc 1905). The court recognized that by reason of what is now § 556.020 when an offense is created or defined, and the punishment affixed thereto is such that the ac-

---

2. At the preliminary hearing on the arson charge Wanda testified defendant had hired Hayes to burn the barn owned by his wife's relatives.

3. "We shall find no fiend in hell can match the fury of a disappointed woman." Colley Cibber, Love's Last Shift (1696). "Heaven has no rage like love to hatred turned, Nor hell a fury like a woman

scorned." William Congreve, The Mourning Bride (1697).

4. We must confess some difficulty in understanding the rationale of this point and defendant's argument in support thereof since he was charged with and convicted of a misdemeanor—not a felony —and his punishment assessed at a fine —not imprisonment in the penitentiary.

cused may be punished by imprisonment in the penitentiary, such offense is a felony; but, when the Legislature itself names the offense there is no room for controversy and the offense is whatever grade, felony or misdemeanor, that the Legislature calls it. The court held that a violation of § 557.090 is what the Legislature designated it—a misdemeanor—and simply varies the punishment according to the circumstances of the crime. As to charged repugnancy between § 556.020 and 557.090, the court observed that § 556.020 announced a general rule whereby, in the absence of any expression by the Legislature as to what the grade of an offense shall be, further than by fixing the punishment therefor, the punishment will determine the grade, whereas, in § 557.090 the Legislature defined, designated and classified the offense as a misdemeanor. The court noted that if there is any conflict, the specific statute would prevail over the general statute. Defendant's point is without merit.

■ Defendant assigns error in the refusal of the trial court to declare a mistrial when Wanda, over objection, was permitted to answer "yes" to the following question asked by the prosecutor: "Now, while you, of course, were living with him, did certain information come to you which you were—because of—that you were listed as a State's witness?" In support of this assignment the defendant quotes at length from Pointer v. Texas, 380 U.S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965) and its discussions of the confrontation clause of the Sixth Amendment but does not demonstrate the applicability of that case to the case at bar. The point is denied.[5]

Defendant next charges error in permitting Wanda to testify concerning the December 19, 1971, telephone conversation because a proper foundation for such testimony was not first laid.

The record reflects the following:

"Q. Do you remember an incident on the 19th day of December, 1971, where you received some phone calls from the defendant?

A. Yes.

Q. Now, was that prior to the preliminary hearing that you testified against the defendant?

A. Yes, the first subpoena was for the 23rd of December, but it was put off.

Q. Till April?

A. On the 19th was when I got the call from Howard threatening me.

Q. So at the time you received the call on the 19th the preliminary hearing was set for the 23rd?

A. Yes.

Mr. Steelman: We have to object to any telephone calls, Your Honor. There's been no foundation laid as to who made it, how it was made. We must object.

Mr. White: We'll connect it up, Your Honor.

The Court: Overruled.

. . . . . .

Q. (By Mr. White) How did you know it was the defendant, Howard Smith?

A. I've talked to him several times on the telephone.

Q. Did you recognize his voice?

A. Yes.

5. In Pointer v. Texas the United States Supreme Court held that the Sixth Amendment's guarantee of a defendant's right to be confronted with the witnesses against him, including the right of cross-examination, was applicable to the States by the Fourteenth Amendment. The principal witness against Pointer had testified at a preliminary hearing, Pointer was not represented by counsel, and no cross-examination conducted. At Pointer's trial the State, after showing the witness had removed himself from the state and did not intend to return, was permitted to use the preliminary hearing transcript of the witness's testimony. The court held Pointer's right of confrontation was wrongfully denied.

Q. And you—you know his voice when you hear it?

A. Yes."

■ Here, Wanda—hardly a stranger—testified positively she recognized defendant's voice on the telephone. If the witness recognizes the voice of the caller, the substance of a telephone conversation is admissible. State v. Bradley, 352 Mo. 780, 179 S.W.2d 98 (1944). Her testimony as to what he told her in the telephone conversation was competent and material. We find no error.

■ Defendant's final claim of error asserts prosecutorial misconduct in cross-examining defendant about trouble or difficulties defendant had with his former wife Ella and her relatives. Defendant contends this denied him a fair and impartial trial. In his brief defendant sets forth portions of his cross-examination concerning difficulties defendant and Lawrence Cook had as a result of defendant dating Susan and three questions dealing with defendant's troubles with his former wife, Ella. The matter of defendant's courtship and marriage to his second wife, Susan Cook, was first brought out in the testimony of Wanda—without objection. This matter was further developed in defendant's cross-examination—without objection. When the prosecuting attorney sought to ask if defendant and Lawrence Cook had engaged in fights over Susan, the court sustained defendant's objections. The court likewise sustained defendant's objections to the three questions asked defendant about his former wife. From the record we do not find prejudice or the denial to defendant of a fair trial. State v. Allen, 363 Mo. 467, 251 S.W.2d 659 (1952). The fact the jury assessed the minimum punishment prescribed by law confirms this conclusion. State v. Golden, 353 Mo. 585, 183 S.W.2d 109 (1944).

The judgment is affirmed.

TITUS, C. J., and STONE and HOGAN, JJ., concur.