THE STATE v. EDGAR L. DAVIS, Appellant.—84 S. W. (2d) 930.

Division Two, July 11, 1935.

*Ralph S. Latshaw, Geo. H. Jones* and *Sam Modica* for appellant.

*Roy McKittrick,* Attorney General, and *Wm. Orr Sawyers,* Assistant Attorney General, for respondent.

414

TIPTON, P. J.—In the Circuit Court of Jackson County, Missouri, the appellant was convicted of murder in the second degree for killing Paul Proctor and was sentenced to ten years' imprisonment in accordance with the verdict. The appellant admitted that on September 14, 1933, he shot Proctor who died four days later.

I. On September 15, 1933, the deceased made a statement which was introduced in evidence as his dying declaration. The admission of this statement was assigned as error. The statement is as follows:

"I, Paul Proctor, realizing the fact that I am mortally wounded and without hope of recovery, and in the immediate presence of death, do make this as my dying statement:

"At about 11:45 on the 14th of September in the morning I went to the office of Dr. Davis at 1125 Grand Avenue. I had been there before but he had never treated me. I met him through a job I had delivering circulars. By that I mean I had once gone there looking for a job delivering circulars.

"I went there on the occasion of this trouble for a chat and because I had a sore elbow that I thought he could help. I chatted with him for ten minutes. He looked at my elbow but did not treat it. He put something on it that I think was alcohol. He wanted $5 and I hadn't thought he would charge me anything. I had told him I was going to buy a suit of clothes and I had the money with me. I had showed him the bills and there was $23. I had opened the roll of bills while I was talking to him. I had a rubber band around the money. I did not take my clothes off for the treatment, but rolled my sleeve up. I had been in to see about the suit with Louis Harris. I was almost at the steps when Dr. Davis shot me I swear I can't think of any reason why he shot me but I think he was just

crazy. Everything I have told you is the truth. I had this money at home and kept it behind the mirror of the dresser in my room. There were three five dollar bills and eight one dollar bills—I counted it before I left home and I know there was $23. We had a pretty hot argument about the payment of the treatment. He said I would wish I had paid the $5 for the treatment.

"(Signed)                                    Paul Proctor
                                                    "X (His mark)
"Witnessed September 15-1933 at 3:55 P. M.
                        "R. A. Woodbury
                        "C. A. Lusk, Jr.
                        "J. B. Rush."

This statement was objected to on the ground that at the time it was made there was not a sufficient showing that Paul Proctor realized that all hope of his recovery had passed and there was no possibility of his getting well.

This statement was taken by Roger C. Slaughter, an assistant prosecuting attorney of Jackson County, who later reduced it to writing and had it read to the deceased and signed by him that afternoon.

The testimony tended to show that the deceased had been told by Dr. Woodbury that he was going to die and deceased stated to Slaughter that he "knew he was going to die and that he wanted to tell his version of this story to clear it up." The deceased was very weak, it was hard for him to breathe and he could only speak a word or two at a time. After the statement was written, it was read to him and he said that there were one or two omissions that he wanted to add. These were added to the statement and it was signed by him with his mark, because he was so weak that the doctor did not want him to make the exertion necessary to write his name.

Four shots had penetrated his body, one lodging in his spine. Dr. Woodbury testified that he was very low at that time. There was no material change in his condition from the time he signed the statement until his death. After the statement was signed he stated on several occasions, "Won't they do something for me?"

The appellant contends that this statement shows that the deceased did not realize he was going to die, in other words, it shows that the deceased had not given up hope of recovery.

"A dying declaration, in order to be admissible as such, must have been made in the belief on the part of the declarant of impending death, after hope of recovery has been abandoned. Whether or not it was so made is a question to be determined by the court as a preliminary question in the absence of the jury before it is admitted in evidence. In so determining the declarant's state of mind, the circumstances under which the statement was made may and should be considered, and it is the impression of almost immediate death

and not the rapid succession of death that determines the admissibility of the statement. [State v. Anderson (Mo.), 34 S. W. (2d) 25, and State v. Barnes (Mo.), 204 S. W. 264, and cases cited.]'' [State v. Custer, 336 Mo. 514, 80 S. W. (2d) 176.]

The evidence tended to show that the deceased had given up all hope of recovery. The fact that he later said, ''Won't they do something for me?,'' does not show that he thought that he was going to recover, it was an expression of hope that he would be relieved of his suffering. [State v. Evans, 28 S. W. 8, 124 Mo. 397.]

In the case of State v. Vest, 254 Mo. 458, 1. c. 468, 162 S. W. 615, we said:

''There was no error in admitting evidence as to the dying statements. They were made when all hope of life was abandoned. The fact that at one time the next morning Stanley expressed a feeling that he might live if blood poison did not set up, does not destroy their admissibility. It was only the momentary glimmer of hope for one who felt how hard it was 'to quit in the middle of the game.' It is sufficient that the declarations were made at a time when there was no hope of recovery. [State v. Craig, 190 Mo. 1. c. 339.]''

The appellant also contends that the statement ''was not the dying declaration of deceased but was a summary of purported statements of deceased aided by suggestions of another.'' (The assistant prosecutor, Mr. Slaughter.) Such objection was not made when the statement was introduced in evidence, therefore, this point is not before us for review. [State v. Gore, 237 S. W. 993, 292 Mo. 173.]

We hold that the statement was properly admitted in evidence.

II. The appellant also contends that the evidence is not sufficient to sustain the verdict. The appellant admitted that he shot the deceased, but he contends that deceased robbed him of twenty-three dollars. We have just ruled that the dying declaration of Proctor was properly admitted in evidence. This statement which is set out above, shows that the appellant shot deceased after an argument in regard to a fee for professional services. The appellant's entire argument is based on the theory that the statement is unworthy of belief. ''It is fundamental that neither the trial court nor this court can pass on the weight of the evidence in a criminal case; that function belongs to the jury.'' [State v. Creighton, 330 Mo. 1176, 52 S. W. (2d) 556.] In this case the appellant admitted that he shot the deceased in a vital part of his body; all the evidence shows that the appellant purposely shot deceased and that he died from the wounds caused from that shot. Thus the evidence shows the intentional killing of the deceased with a deadly weapon, which is sufficient to sustain a conviction of murder in the second degree. [State v. Wampler, 58 S. W. (2d) 266; State v. Eason, 322 Mo.

1239, 18 S. W. (2d) 71; State v. Snow, 293 Mo. 143, 238 S. W. 1069; State v. Kyles, 247 Mo. 640, 153 S. W. 1047.] The contention that the evidence was insufficient cannot be sustained.

III. The appellant next complains of the action of the trial court in refusing to give Instruction No. 12, requested by him. This instruction is as follows:

"The court instructs the jury that the statement read to you as the dying declaration of Paul Proctor should be received by you as such declaration; but because it is a dying declaration you are not necessarily bound to believe or give it any more weight than the testimony of any other person who has testified in this cause and you will only consider it along with all the other facts and circumstances in this case."

This instruction assumes that the statement of Paul Proctor is his dying declaration instead of leaving that fact for the determination of the jury. It is not as favorable to the defendant as it might have been. We have recently ruled that it is for the jury to decide if the purported statement is in fact the dying declaration of the deceased. [State v. Custer, supra.] If the appellant was willing to concede that it was Proctor's dying declaration, the instruction should not have been refused for that reason.

In the case of State v. Gore, supra, Instruction 9½ was approved by this court. That instruction is as follows:

"The statement read to you as the dying declaration of deceased should be received by you as such declaration, but because it is a dying declaration you are not necessarily bound to believe it, but you will give it that weight which you think it ought to have when considered with all the other facts and circumstances in evidence."

In discussing that instruction we said: "Instruction 9½ fully covered the law governing the weight to be given the dying declaration. It told the jury to give it 'that weight which you think it ought to have when considered in connection with all the other facts and circumstances in evidence.' This instruction is free from comment on the testimony, and authorized counsel to argue fully the facts that such statement was not made in the presence of the defendant, that declarant was not subject to cross-examination, that declarant was not subject to prosecution for perjury, and that the jury had no opportunity to observe the manner or condition of the declarant while making the statement. Instruction 9½ gave defendant all she was entitled to."

In the case of State v. Peak, 237 S. W. 466, 1. c. 470, 292 Mo. 249, we said:

"The giving of instruction numbered 2a, defining the manner in which dying declarations should be considered by the jury, is as-

signed as error. It correctly declares the law, and is in the language employed in a like instruction approved by this court in State v. McMullin, 170 Mo. 1. c. 625, 71 S. W. 221.

"Considered, however, in the light of reason rather than that of precedent, the instruction does not violate the rule forbidding a comment upon the weight of the evidence. By this we mean that it does not contain statements as to the sufficiency or value of the evidence of the declarant or any part of same. To express the definition differently, there is no attempt made to differentiate said testimony and tell the jury that it is entitled to great or little weight in violation of the statute (Sec. 4038, R. S. 1919) and the rulings thereon (State v. Rogers, 253 Mo. 1. c. 412, 161 S. W. 770; State v. Sivils, 105 Mo. 533, 16 S. W. 880; State v. Smith, 53 Mo. 267; State v. Hundley, 46 Mo. 414.)"

Respondent says, "This instruction tells the jury that they are not necessarily bound to believe or give a dying declaration any more weight than the testimony of any other witness testifying in the case," and for that reason it was properly refused. To this we do not agree; the jury is not bound to believe the dying declaration, any more than they are bound to believe the testimony of any witness. The instruction simply told the jury that they are to consider the statement "along with all the facts and circumstances in this case," the same as they are to consider the testimony of any other witness when considered with all the facts and circumstances in the case. In other words, the instruction told the jury that they could believe or disbelieve the dying statement of Proctor as they saw fit when the jury took into consideration all the facts and circumstances, the same as if some witness had testified to the same state of facts contained in the statement. We believe this to be a correct statement of the law, and is very similar to the instruction that was approved in the Gore Case, supra. No other instruction dealing with this subject was given.

IV. The other assignment of error deals with improper argument of the State counsel, as this case must be reversed and remanded it will not be necessary to discuss this assignment as it probably will not occur in the next trial.

The trial court erred in refusing Instruction No. 12 and the judgment must be reversed and the cause remanded for a new trial. It is so ordered.

All concur.