THE STATE v. ANDERSON LOGAN, Appellant.—126 S. W. (2d) 256.

Division Two, March 15, 1939.

352

*Roy McKittrick,* Attorney General, and *W. J. Burke,* Assistant Attorney General, for respondent.

BOHLING, C.—Anderson Logan was convicted of the first degree murder of Angela Logan, his wife. This is his second appeal. The facts of the instant record, as did the facts upon the former appeal (see 341 Mo. 1164, 1166, 111 S. W. (2d) 110), sufficiently established appellant's guilt. They will be further developed in the consideration of the issues presented. The punishment was fixed at life imprisonment. Appellant has not filed a brief.

Appellant is a negro. After the members of the jury panel had been examined for cause and the State had made its peremptory

challenges, appellant filed a motion to quash the panel of the remaining twenty-four jurors. His motion for new trial assigns error in the overruling of said motion on the ground his rights under the Fourteenth Amendment to the Constitution of the United States had been violated; more particularly in that he "did not have a chance to have any negroes on the jury of twelve men" to be selected to try the case. The reason assigned for error is insufficient in law. The legal issue involved is one of discrimination against and not one of a chance to have negroes on the jury. Upon the first appeal the cause was remanded because of discrimination against negroes for jury service; but ELLISON, J., speaking to the instant issue, said (341 Mo. l. c. 1172(3), 111 S. W. (2d) l. c. 114(4) ) : "It is not the law that the appellant was absolutely entitled to have negroes on the jury that tried him, or even the panel from which that jury was drawn. It may happen that no negroes (or members of any other particular class of our citizens) will be on the regular panel for a given term of court, or on the special venire for a particular case. If that occur in due course and good faith because of the ratio of white to negro population, or because of actual disqualifications, pure chance or the like, it is within the law; but if the defendant be deprived by design of the *chance* of having negroes on the jury which is to try him, the Federal Constitution may be invoked. The fact that no negroes were drawn in the particular case is not conclusive against the State; and the fact that negroes might not have been drawn in due course is not conclusive against the defendant."

The panel of thirty was selected from forty-one talesmen. Six of the forty-one were negroes; of which number four disqualified for cause. Appellant's real complaint is against the exercise by the State of its six statutory peremptory challenges in striking the names of the two negroes from the jury list and thereby depriving appellant of an opportunity to have negroes on the trial jury. The record contains no showing of discrimination.

Appellant's motion was in effect a challenge to the array. These should be timely filed. [State v. Taylor, 134 Mo. 109, 143(i), 35 S. W. 92, 99(i) ; and consult State v. Powers, 136 Mo. 194, 200, 37 S. W. 936.] A defendant should not be permitted, after participating in the *voir dire* examination of the jury panel, to take the chance that the State's exercise of its right of peremptory challenge will result favorably to defendant and then, if disappointed, first present objections which have their foundation in the array.

Appellant also challenged two jurors for cause on the sole ground they stated they had at one time been members of the Ku Klux Klan. We follow the ruling of State v. Griffith, 311 Mo. 630, 638, 279 S. W. 135, 137(1, 2), in holding there was no error in overruling said challenges for cause. The record in this case, as in that case, also affirmatively discloses no legal grounds for sustaining a challenge for

cause with respect to said jurors. Consult also State v. Lowry, 321 Mo. 870, 878(I), 12 S. W. (2d) 469, 471(2); State v. Gartland, 304 Mo. 87, 98(II), 263 S. W. 165, 168(2).

■ Appellant next questions the admissibility of the dying declaration of his wife, stating it was obtained by a police officer for the purpose of being used against him and was not a voluntary statement on her part. The statement was to the effect that appellant shot her with a shotgun. The fact that a dying declaration was obtained by or made to an officer does not render it inadmissible. One of the primary purposes of securing such a statement is to have it available for use against an offender. These are not legal reasons for its exclusion. The instant record affirmatively establishes that the statement was voluntary. In fact, her statement reads: "I make this statement knowing I am mortally wounded . . ."; and there was other testimony that she knew she was going to die; that she wanted to make a statement and thereafter the officer took the statement. Appellant's wife had not been living with him and had made arrangements to institute an action for divorce. Appellant desired that she return to his home; he accosted her on the streets of Columbia; wanted to talk with her and, after she refused, shot her with a shotgun while she was within a few feet of him, inflicting a large gunshot wound in the upper abdomen. This occurred at two P. M. When she was examined at the hospital shortly thereafter the physician found her in a dying condition. She died about seven P. M. The statement was admissible. [State v. Custer, 336 Mo. 514, 517(1), 80 S. W. (2d) 170, 177(1-3); State v. Davis, 337 Mo. 411, 414(I), 84 S. W. (2d) 930, 931(1-3); State v. Strawther, 342 Mo. 618, 116 Mo. (2d) 133, 136(2, 3).]

■ Maria Fisher, mother of deceased and a witness for the State, died during the interval between the first and second trials. Appellant's counsel did not cross-examine Mrs. Fisher at the first trial, and, setting up said failure to cross-examine, he now assigns error in the admission of the transcript of her testimony, citing Section 22 of Article 2, Mo. Const., 15 Mo. Stat. Ann., p. 346, providing that ". . . the accused shall have the right . . . to meet the witnesses against him face to face . . ." The right thus accorded an accused is a personal privilege which he may waive. [State v. Wagner, 78 Mo. 644, 648.] Practically all jurisdictions admit testimony given at a former trial upon a proper showing covering the absence of the witness, and the cases appear to be substantially in accord that the constitutional requirements is fulfilled if the accused was present, was confronted by the witness and might have had counsel or have cross-examined if he so desired. [Baldwin v. United States, 5 Fed. (2d) 133, 134 (certiorari denied, 269 U. S. 552, 70 L. Ed. 407, 46 Sup. Ct. 17); Annotations, 79 A. L. R. 1395(b), 15 A. L. R. 514(b), 25 L. R. A. (N. S.) 871; 14 Am. Jur., p. 895, secs. 187, 188; 8 R. C. L., p. 216, sec. 212; 16 C. J., p. 839, sec. 2116.] Although we fail to find the

precise issue ruled in this jurisdiction, our statement of the general rule covers the instant issue. State v. Pierson, 337 Mo. 475, 485(a), 85 S. W. (2d) 48, 53(5) (stating: "From an early day (see State v. McO'Blenis, 24 Mo. 402), we have held that the constitutional right of confrontation is not denied where a witness is dead at the time of trial and the testimony of such witness, given and duly preserved at a former hearing in the same case, at which the defendant was present and was accorded the right to cross-examine, is read to the jury"); State v. Barnes, 274 Mo. 625, 629, 204 S. W. 267, 268(2); State v. Lloyd, 337 Mo. 990, 994, 87 S. W. (2d) 418, 420(3).

Appellant makes two attacks against the State's Instruction No. 1, submitting murder in the first degree. Said instruction, insofar as deemed essential to a ruling of the issues, reads:

" 'Murder in the first degree' is the felonious and wrongful killing of a human being wilfully, deliberately, and premeditatedly and with malice aforethought . . . 'Wilfully' . . . means intentionally, not accidentally. 'Deliberately' . . . means an intent to kill executed . . . in a cool state of the blood in furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose . . .

" 'Premeditatedly' means thought of beforehand . . . 'Malice' . . . means that condition of the mind which prompts a person to intentionally take the life of another without just cause, justification or excuse, and signifies a state of disposition that shows a heart . . . fatally bent on mischief. 'Malice aforethought' means malice with premeditation. 'Feloniously' means wickedly and against the admonition of the law.

"Bearing in mind these definitions, the Court instructs the jury that if you find and believe . . . that Anderson Logan . . . on the third day of January, 1935, without just cause or provocation, did feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought with a certain loaded shotgun, and that said shotgun was a dangerous and deadly weapon, shoot Angela Logan, then and there and thereby inflicting upon her, the said Angela Logan, a mortal wound, if any, and the said Angela Logan on the third day of January, 1935, died . . . then you will find the defendant guilty of murder in the first degree. . . ."

Appellant says the instruction did not require the jury to find that deceased died from the wound inflicted by appellant. The complaint attacks the omission of the words italicized, or words of like import, in the following clause: " . . . and *that from said mortal wound, if any,* the said Angela Logan on the third day of January, 1935, died . . ." The instruction required a finding that appellant inflicted "a mortal wound" upon his wife and that she died the same day. It also defined murder in the first degree as "the killing of a human being" in a definite manner. The words "mortal" and "murder"

are derived from the Latin "mors"—death. Mortal means "destructive to life; causing or occasioning death; exposing to or deserving death, esp. spiritual death; deadly; fatal; as, a *mortal* wound . . . ." [Webster's New International Dictionary, 2nd Ed.] While the instruction is subject to criticism, a jury should not have returned a verdict of guilty thereunder unless they found that appellant inflicted a fatal and deadly wound, a wound destructive to life and causing or occasioning death, upon his wife, on January 3rd and that his wife died on January 3rd, and unless they also found that appellant "killed" his wife. [Consult State v. Baker, 122 Kan. 552, 554, 253 Pac. 221, 222(1).] But our ruling need not rest within such narrow compass. The instruction submitting murder in the second degree expressly included the italicized words. The instruction submitting manslaughter expressly required a finding that appellant "intentionally shot and killed" his wife. In addition to the definition of murder in the first degree in Instruction No. 1, Instruction No. 2 told the jury, in part, that "If, therefore, the jury believe from the evidence that the defendant took the life of Angela Logan by shooting her in a vital part with a dangerous and deadly weapon, and with . . . [et cetera], then such killing is murder in the first degree . . . ." Appellant made no attempt to show or contention that deceased died from causes other than the wound he inflicted. He made the affirmative defense that the gun was accidentally discharged. The trial proceeded throughout on the theory that his wife died of the shotgun wound. The record is devoid of an intimation of any intervening efficient cause of death. Appellant's instruction submitting his defense of misadventure or accident (reading: ". . . if you . . . find . . . that the wound that occasioned the death of Angela Logan was the result of misadventure . . .") assumed that the "mortal wound" occasioned the death of his wife. We hold, upon the instant record, reversible error was not committed.

■ Appellant also says the instruction does not embody his defense that the homicide was the result of misadventure or accident. The court gave, at appellant's request, an instruction which told the jury that if they found certain facts therein hypothesized they should acquit appellant "on the theory of homicide by misadventure or accident." If appellant inflicted "the wound that occasioned the death of Angela Logan" feloniously, wilfully, deliberately, premeditatedly and of malice aforethought as the jury found within the definitions of said terms supra, the act, of necessity, was not the result of "misadventure or accident."

■ Appellant asserts error in the refusal of his instruction on motive, especially that portion thereof informing the jury that if the evidence failed to show any motive on the part of appellant to commit the offense, "then this is a circumstance which the jury ought to consider in connection with all the evidence in the case in making up their

verdict . . ." The State's evidence established appellant shot his wife and was incensed at her because she refused to live with him; because she had taken steps to secure a divorce; and because he thought others were intermeddling in their affairs.

Appellant's defense was that the shooting was accidental within the meaning of Section 3986, Revised Statutes 1929 (Mo. Stat. Ann., p. 2792), reading: "Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases: First, . . . in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent . . ." State v. Farrel, 320 Mo. 319, 327, 6 S. W. (2d) 857, 860(8), defines "accident" and "misfortune" as "a killing without intention to kill."

Our attention has been directed to State v. Brown (1904), 181 Mo. 192, 202, 217, 79 S. W. 1111, 1113, 1117, a case involving neither circumstantial evidence nor accident, reading: "In cases where the killing is denied, and the proof of that fact depends upon circumstances, or where the defense is made that the killing was purely an accident, it is apparent that the inquiry as to the motive is important, and in cases of that character the instruction requested is appropriate, and should always be given." The cases there cited sustain the holding that said defendant was not entitled to an instruction on motive; but they do not support the quoted *dictum*, made without reasoning the issue or citation of sustaining authority.

Intent and motive are not in law one and the same thing, although frequently so considered in the popular mind. State v. Santino (Mo. 1916), 186 S. W. 976, 977(4), states: "Motive is the moving cause which induces action; it has to do wholly with desire. Intent is the purpose or design with which the act is done, and involves the will." [State v. Hyde, 234 Mo. 220, 231, 226, 136 S. W. 316, 324(12), 322(7, 8), is to like effect.]

It is difficult to conceive a criminal act that may not involve some desire beyond the act itself—avarice, revenge, pleasure, et cetera. The law prohibits acts, not bad motives; and good motives do not exonerate crime. A desires money to pay a debt. A, impelled by his desire to pay his debt, undertakes to rob B and finds it necessary to shoot B, resulting in B's death. Broadly, crimes are composed of two elements: (1) the act and (2) the intent. More precisely, the murder of B embraces (1) a series of acts—(a) the muscular action of A, such as loading the revolver, raising his arm, taking aim and pulling the trigger; (b) the concomitant circumstances of B being within range, the pistol being loaded, et cetera; (c) the consequences of A's muscular act, the striking of the hammer against the cartridge, the ignition of the powder, the expelling of the bullet, its passing through space, striking and penetrating the body of B, and the body of B undergoing physical changes resulting in B's death;—and (2) A's criminal intent. The only independent, voluntary and self-willed acts of A are his

muscular movements. Again, generally speaking, it may be said that A intended to kill B and rob him to pay A's debt. The ultimate end was the payment of A's debt. More precisely, within the criminal law (absent some special statutory provision), the scope of A's intent involved in the offense of killing B embraces only the series of prohibited acts, whereas the scope of A's motive embraces the robbing of B and the payment of A's debt. A, in law, may have intended, although sincerely not desiring, B's death. This ulterior desire, i. e., that portion of the intent extending beyond the elements in law under the facts essential to the crime, constitutes, in law, the motive. Suppose, as another illustration, that A killed B in self-defense; a purely justifiable homicide; or accidentally, i. e., a purely excusable homicide. If A harbored the most intense hatred toward B and desired B's death; yet, if the facts established only that A killed B to save his own life or killed B accidentally, A is not to be convicted because of his hatred toward B or his desire for B's death. Here that portion of the intent within the constitutive elements essential to an offense in law embraces the defensive features of the intent accompanying the involved issues of justifiable or excusable homicide; and should be instructed upon as part of the law of the case. Motive, as thus understood, is an evidentiary fact—a circumstance for argument and the consideration of the jury—and appellant's instruction so recognized it.

Accordingly, the cases we have found presenting the issue and involving circumstantial evidence (State v. Aitken (1912), 240 Mo. 254, 266 (III), 144 S. W. 499, 502 (5, 6) ) or accident (State v. Clinton (1919), 278 Mo. 344, 350 (VII), 213 S. W. 841 (10)) expressly hold contra to the *dictum* in said Brown case. The Aitken case reasoned the issue and sustains our observations. It states: "It does not follow from the fact that a circumstance is material that a jury must be instructed especially upon that circumstance. Nor does it follow that failure to instruct is error because it would not be error to instruct on the point. . . In the case before us the court did not instruct on motive. It might have done so. . . . It was not error to fail to instruct on motive, which is but one of all the circumstances to be considered by the jury and does not require a special instruction." State v. Sam Brown (1902), 168 Mo. 449, 473 (10), 68 S. W. 568, 576 (10), also says of the instruction: "This instruction was properly refused, because a man is not to be acquitted of crime simply because his motive for perpetrating it cannot be discovered." [See also State v. Cox (1915), 264 Mo. 408, 415 (II), 175 S. W. 50, 51 (5) ; State v. Feeley (1906), 194 Mo. 300, 320, 92 S. W. 663, 668, 112 Am. St. Rep. 511, 525.]

The law in this jurisdiction is to the effect that it is not error to give a proper instruction on "motive" [State v. Evans (1900), 158 Mo. 589, 698 (VIII), 59 S. W. 994, 1000 (8) ; the Santino case, supra]; nor error to refuse to instruct thereon [the Aitken and Clinton, supra,

among other cases]; but if an instruction be given on behalf of the State authorizing a conviction whether any motive be apparent or not, a defendant, upon proper request, is entitled to the converse thereof. [State v. Foley (1898), 144 Mo. 600, 620(III), 46 S. W. 733(3).]

In the instant case the court gave appellant's requested instruction on the defense of accident or misfortune, but gave no instruction on motive. Appellant's given instruction covered the constitutive defensive features of appellant's case, and, as we read it, was more favorable to defendant than he was entitled to have it. We rule the point against appellant.

The judgment is affirmed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Ellison* and *Tipton, JJ.*, concur; *Leedy, J.*, concurs in result.