252 S.W.2d 330 (1952)
STATE
v.
SLATEN.
No. 43068.
Supreme Court of Missouri, Division No. 2.
October 13, 1952.
Motion for Rehearing or to Transfer to Denied November 10, 1952.
I. Joel Wilson, St. Louis, for appellant.
J. E. Taylor, Atty. Gen., Lawrence L. Bradley, Asst. Atty. Gen., for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied November 10, 1952.
BARRETT, Commissioner.
Fred Douglas Slaten has been found guilty of murder in the first degree and sentenced to life imprisonment. Except for certain specific events, Slaten testified that he had no memory or recollection of where he went, what he did or where he was taken, and particularly no memory of shooting anyone, after he left the Panama Club sometime after eleven o'clock and started west on Cass Avenue. A jury has found, however, that he shot and killed Mote Lee Land on March 22, 1950 and that in so doing he was guilty of murder in the first degree.
Briefly the facts and circumstances, as they could reasonably be found from the state's evidence, were these: Slaten, thirty-one years of age, had been a member of the St. Louis police force since June 1949. As a police officer he had been issued a badge and a Smith & Wesson .38 caliber revolver, bearing serial number C-7103. On March 22, 1950 his shift of police duty ended about 3:30 in the afternoon and he went home and changed clothes. He had received a refund check from his insurance as a war veteran in the sum of $222.75 and about 6:30 went to the Harlem Tap Room and asked Mitzi Teeton to cash the check, *331 Mitzi could not cash the check so he went next door to a barbershop and he and John Brown went to Louie's Pawn Shop and cashed the check. On the way back to the barbershop they stopped at "Old Roebuck's Liquor Store" and bought a pint of whisky. Slaten says that he did not drink any of this whisky but left it in the barbershop for Brown and Turk. He returned to the Harlem Tap Room, Mitzi says it was then about eight o'clock, and bought a half pint of whisky for the house, and later bought another half pint for himself and a girl companion he had acquired in the tap room. He says that he had but two drinks when he and the girl left the tap room and went to the Panama Club. There he bought another half pint from which he took but one drink and left $195 of his money with the bartender. The girl he was with claims that be became abusive and belligerent and while he was away from their booth the first time she asked another woman, Mary Thomas, to sit with her. While he was away from the booth a second time the girl, Halley Watkins, left. About eleven o'clock he left the Panama Club and says that he was going to call on a friend at 3100 Cass Avenue. As he walked along the street he says that he became ill and dizzy and was nauseated. From that time forward, except for one encounter, he does not remember anything. He did not remember shooting anyone, he did not remember being arrested, or being taken to the hospital and finally, being taken to the police station. He said that he had had but three drinks. The inference he would have drawn from the circumstances is that the two women learned that he had $195 on his person and gave him a "mickey finn" in his third and last drink.
In any event, according to the state's evidence, as Slaten weaved down Cass Avenue with his police badge in one hand and his pistol in the other he belligerently accosted people on the street, shot into a doorway and fired a shot into a passing automobile. Mote's half sister, Martha Smith, and her boy friend, Eddie Brew, were parked at the curb in front of 2950 Cass Avenue, where Mote and his half sisters and mother lived. They saw Slaten with his topcoat over his shoulders staggering down the street, and as he approached the parked car and 2950 Cass Avenue Mote Land came across the street. Slaten was in the entrance to the gangway and as Mote approached, Slaten, without provocation or forewarning, pushed him around, or "bumped into" him, and as he turned Mary Thomas and Eddie Brew saw Slaten point a gun and saw the fire and heard the shot as Mote fell to the ground. The bullet went through Mote's abdomen and liver and lodged in the tenth dorsal vertebra. The police were called immediately and in front of 3010 Cass Avenue Slaten's topcoat was found and at 3042 Cass Avenue a policeman came upon Slaten who threw his pistol on the ground and fell upon it. There were five empty shells in the revolver and one live shell. The pistol was number C-7103 and ballistic tests indicated that the bullet found in Mote's back was fired from that gun.
By its instructions the court hypothesized for the jury Slaten's guilt of murder in the first degree, murder in the second degree and manslaughter. The court also hypothesized his innocence upon a finding that he shot Mote in self-defense. Upon his appeal counsel urge that the court erred and that he did not have a fair trial for the reason that the court failed to also instruct the jury upon the subject of "accidental homicide" as a part of the law of the case, Section 546.070(4) RSMo 1949, V.A.M.S., even though requested to do so as indicated by instructions offered on his behalf. And, it has become settled, if there is any evidence upon the whole record, however improbable, in support of the theory of an "accidental" shooting and killing within the meaning of the statute on excusable homicide, Section 559.050 RSMo 1949, V.A.M.S., that the court is bound to properly and fully instruct the jury upon the subject. State v. O'Kelley, Mo.Sup., 213 S.W.2d 963; State v. Crowley, 345 Mo. 1177, 139 S.W.2d 473; State v. Stone, 354 Mo. 41, 188 S.W.2d 20. The meritorious question upon this appeal is whether there is any evidence, from any source, from which the jury could draw the inference of an accidental killing within *332 the meaning of the statute. State v. Allen, Mo.Sup., 235 S.W.2d 294; 41 C.J.S., Homicide, § 387, page 194.
In contending that there is evidence from which an inference of accident could be drawn counsel for Slaten say that "as these men reached this gangway the deceased, without uttering a word of warning to defendant of his intention to enter this gangway, moved from the outer side of the walk directly in front of defendant while but a step in advance of him as he came along the south side a little over the middle of the walk on the building line side causing a collision, bumping and jamming together." Later, counsel says, by way of argument, "It is obvious that it was Mote Land's negligence or wanton act of crossing the walk from the north to the south side in front of defendant in an effort to get in to the gangway which caused the collision, bumping and jamming resulting in the accidental and unintentional firing off of a pistol, causing the death of deceased." This line of argument refers to the testimony of the state's eyewitnesses, Martha Smith and Eddie Brew. They did not say, however, that Mote bumped or jammed into Slaten either accidently or purposely and that the gun in Slaten's hand went off as they collided. Martha said, "Well, as Mote got up on the sidewalk and made an attempt to go into the gangway, why this man had staggered up to the gangway, and he slightly pushed Mote, and then he shot Mote, and Mote fell." Eddie's vivid and graphic description of the shooting was in this language: "Just as Mote Land approached the sidewalkI had my eyes on them, and as he got up even there. Officer Slaten bumped into Mote Land, and he turned around and by then the gun had fired. * * * Land approached the gangway and Officer Slaten was coming along and he pushed him over 
"Q. (Interrupting) Who pushed who? A. Slaten pushed Land.
"Q. Slaten pushed Land? A. That is right.
"Q. And with that push then, you say, the shot was fired? A. When he pushed Land, Land turned around and then he shot him."
Eddie was cross-examined at length as to this particular point and in precisely describing the meeting said, "He (Mote) was spun around and then he was shot. * * *
"Q. How did he push him, in what manner? A. Just bumped into him and spun him around. * * *
"Q. You are demonstrating with the right arm. A. That is right, pushed Land's left arm around. * * * Yes, spun him aroundpushed him, and then he fired into Land.
"Q. Did you see Land jump about? A. Land did not jump or do anything."
As indicated, after leaving the Panama Club and becoming dizzy, Slaten remembered but a single incident which he described in this language: "Well, the only thing that I can remember was a man walking up to me, I didn't know where he came from, and he grabbed me, and he hit me. He says, `What were you doing with my woman ?' And I tried to answer him, and he shoved me, and he says, `You son-of-a-bitch, I'll get you.' And he hauled off and hit me again. He hit me several times, it all happened so quick, I was trying to protect myself, I was backed up against something, I don't know what it was, he was grabbing at me, grabbed me by the shirt up here (indicating), and grabbed my coat." He did not remember where this incident occurred. He said that he was apprehensive of the safety of his person and of his property but he did not know what happened or which direction he went after that encounter. There were scratches and abrasions on his face and nose and he had a black eye but he did not remember being arrested, or being taken to the hospital and examined by a doctor or being taken to the police station. On cross-examination the following testimony was given:
"Q. Now, at this time Mr. Slaten, will you tell this court and jury please whether or not you remember shooting a man on Cass Avenue? A. I do not.
*333 "Q. You have no recollection of shooting a man ? A. I do not. * * *
"Q. Do you remember throwing a gun down on the ground and lying down on top of it immediately before your arrest? A. No, I don't. * * *
"Q. I will ask you please to tell the court and jury whether or not on the night of March 22, 1950 that you shot a man, Mote Land, in the vicinity of 2950 Cass Avenue? A. I have no recollection of doing anything like that.
"Q. You have no recollection of shooting him? A. No, I don't."
If, as the jury found, Slaten killed Mote, he used a "dangerous weapon," and if the killing is to "be deemed excusable" it must have been "committed by accident or misfortune * * * in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent". Section 559.050(1) RSMo 1949, V.A.M.S. If the encounter he remembered was with Mote, and it may be assumed that it was, he could have been acting in self-defense and therefore engaged in a "lawful act by lawful means" which, no doubt, prompted the given instruction on self-defense. But the encounter, as described by either the state's witnesses or by Slaten, does not permit the inferences possible from this saloon melee; "And all I know, I got socked from the back of the head, and from the front. And the next thing I knew I was on the floor. And the gun went off." State v. Crowley, 345 Mo., Ioc. cit. 1181, 139 S.W.2d loc. cit. 475. Nor is the described encounter comparable to the battle royal in which the defendant slashed at all the parties assaulting him and, as he claimed, accidentally stabbed his deceased girl friend as she was trying to assist him. State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492. There is no evidence here of a gun discharging in a scuffle or fight over its possession as there was in State v. O'Kelley, supra; State v. Stone, supra; and State v. Clinton, 278 Mo. 344, 213 S.W. 841. And, there is no evidence from which it is a possible inference that Slaten stepped in a hole, or stumbled or slipped or that a loaded and cocked gun discharged as he stumbled or fell. State v. Bradley, 352 Mo. 780, 179 S.W.2d 98; State v. Meidle, Mo.Sup., 202 S.W.2d 79; State v. Bartley, 337 Mo. 229, 84 S.W.2d 637. He may have been engaged in the lawful act of self-defense but there is no evidence from which it is a possible inference that the homicide was "committed by accident or misfortune" and "without unlawful intent." The case reduces itself to the fact that Slaten remembers an encounter, one justifying self-defense, but he has no memory or recollection of shooting anyone, either intentionally or unintentionally, and that evidence does not permit the possible inference of accidental or excusable homicide. Since there was no evidence of excusable homicide the court was not bound to instruct the jury upon the subject. State v. Bennett, Mo.Sup., 87 S.W.2d 159; State v. Hearney, Mo.Sup., 177 S.W. 305.
Upon his cross-examination Slaten was interrogated concerning an incident in Brooklyn in 1949. He admitted that he had had some trouble while attending the police academy. The trouble consisted in his getting drunk in a tavern and being detained by the Brooklyn police until some member of the St. Louis police force came and got him. In his brief here and in his motion for a new trial it is urged that the court erred in permitting the cross-examination for the reason that it did not refer "to any matter referred to in his examination in chief". Section 546.260 RSMo 1949, V.A.M.S. It is also urged that the court subsequently erred in not striking the evidence from the record as having been erroneously admitted because it was an attack upon his credibility as well as upon his character, inadmissible and prejudicial. The interrogation did not, by any stretch of the imagination, relate to any matter Slaten testified about on his direct examination, State v. Christian, Mo.Sup., 245 S.W.2d 895, but his objection here, as well as his assignment in the motion for a new trial, must be based upon the objections made and the reasons assigned at the time the testimony was offered. Errors concerning the scope of the cross-examination may not be raised for the first time upon appeal or in the motion for *334 a new trial, even though a belated proper objection to the scope of the cross-examination may suffice. State v. Bell, 212 Mo. 111, 122, 111 S.W. 24; State v. Turner, 110 Mo. 196, 19 S.W. 645; State v. Pittman, Mo.Sup., 221 S.W.2d 163. Nowhere in this record was there an objection to the scope of the cross-examination, or a belated motion to strike any testimony for the reason that the interrogation was not within the scope of his direct examination. State v. Nicholson, 337 Mo. 998, 87 S.W.2d 425; State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523.
In his direct examination Slaten had testified to his work as a policeman, his training, and the special assignments he had received. In the course of his cross-examination the matter with which we are now concerned arose in this manner: "Q. Well, now while you were in the police department, while you were in training school, did you get in some trouble over in Brooklyn, Illinois? A. Did I get in trouble?
"Q. Yes. A. Yes, I did. "By Mr. Morris: Just a minute, please. I object to the question as being improper, and ask that the answer be stricken.
"By the Court: The objection will be overruled.
"By Mr. Morris: Save an exception to the ruling of the Court."
Counsel gave no reason for his objection and the belated general objection after an unfavorable answer was in effect no objection whatever. State v. Wagner, 311 Mo. 391, 410, 279 S.W. 23, 28. Slaten then entered into a lengthy explanation of his trouble, presenting it in as favorable a view as possible, and there was no other or further objection until the conclusion of the cross-examination at which time counsel said, "Your Honor I renew my objection and move all the testimony of this witness concerning the subject matter just interrogated about by Mr. Dowd be stricken, and the jury instructed to disregard it. It is absolutely improper, and incompetent. It is only done for the purpose of influencing and prejudicing the jury, and it does not affect the credibility of this witness, or this defendant, which can only be done by showing there has been a conviction of a felony." The objection was overruled and counsel then asked for a mistrial and a discharge of the jury.
The interrogation of Slaten concerning the incident in Brooklyn was improper, but it was not so patently improper and inflammatory as to demonstrate unfair prejudice and require the granting of a new trial irrespective of the objection made and the court's ruling. State v. Martin, 229 Mo. 620, 640, 129 S.W. 881, 887. In State v. Fenley, 309 Mo. 520, 275 S.W. 36; State v. Glazebrook, Mo.Sup., 242 S.W. 928, and State v. Willard, Mo.Sup., 192 S.W. 437, there was improper evidence or cross-examination concerning or tending to show other offenses but there was no timely or proper objection to the testimony and in each of these cases it was held, therefore, that the objections urged were not reviewable. In State v. Willard, 192 S.W., loc. cit. 440, the court said, "But when witnesses were first interrogated by the state touching this ancient conviction, no objection was made thereto, nor was any instruction asked taking it from the jury. Having got before the jury without objection, error cannot be bottomed upon subsequent cross-examination about it, to which objection was made."
Counsel insists that by filing a brief and assigning as prejudicial error the matters heretofore considered that he does not thereby abandon the other thirty-six assignments of error set forth in the motion for a new trial. This case and its trial is not an instance of incompetent or inexperienced counsel, and, while this record of over fourteen hundred pages has been carefully considered, there is no reason for not applying the general rule. The assignments in the motion for a new trial which have been omitted from the brief are deemed to have been abandoned. State v. Johnson, Mo.Sup., 245 S.W.2d 43, 49; State v. Perry, Mo.Sup., 233 S.W.2d 717, 720; State v. Davit, 343 Mo. 1151, 125 S.W. 2d 47; State v. Mason, 339 Mo. 874, 98 S.W.2d 574. The indictment is sufficient, *335 the verdict is responsive and in proper form, there is evidence from which the jury could reasonably find the defendant's guilt as charged, there are no errors upon the record proper, and the judgment is affirmed.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court. All concur.