**STATE of Missouri, Respondent,**

v.

**George Benjamin VINCENT, Appellant.**

No. 46849.

Supreme Court of Missouri,
Division No. 1.

March 9, 1959.

James J. Rankin, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was charged and convicted of murder in the second degree of Emel Henderson and he was sentenced to 20 years imprisonment in the state penitentiary. He was prosecuted under the habitual criminal act. Two prior felony convictions, one for murder in the second degree and the other for assault with intent to kill were alleged. Proof was made from the records of the court as well as by the testimony of defendant himself, and defendant had served the sentences and been discharged, but the jury disregarded or disbelieved this evidence and returned a verdict without reference thereto. Defendant has appealed from the judgment entered against him, but he has not favored us with a brief and we shall examine the assignments of error contained in his motion for a new trial. Supreme Court Rule 28.-02, 42 V.A.M.S.

Error is assigned on the trial court's refusal to sustain defendant's motion for judgment of acquittal tendered at the close of the state's case and again at the close of all the evidence. The error if any in overruling the first motion was waived since defendant subsequently offered evidence and testified in his own behalf. State v. Bigley, Mo.Sup., 247 S.W. 169, 171(2). The grounds stated in the second motion

are that " * * * the evidence had failed to prove, or tend to prove that there was present any premeditation or malice aforethought in the circumstances in which the deceased lost his life * * *." It was also stated: "The most that the State proved, if its evidence were believed, was that the defendant was guilty of manslaughter only."

■ If the evidence was sufficient to make a submissible case of manslaughter, the motion for judgment of acquittal was properly overruled, since the offense of manslaughter was included in the charge of murder in the second degree. State v. Ancell, 333 Mo. 26, 62 S.W.2d 443, 446 (5, 6); State v. Reagan, Mo.Sup., 108 S. W.2d 391, 395. However, we shall determine the sufficiency of the evidence to submit the issue of murder in the second degree.

■ In testing the sufficiency of the evidence in a criminal prosecution by such a motion to direct a verdict of acquittal, the facts in evidence must be considered in a light most favorable to the state. State v. Lawrence, Mo.Sup., 280 S.W.2d 842, 846 (2). Accordingly, we shall consider as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom and disregard all evidence and inferences to the contrary. State v. Benjamin, Mo.Sup., 309 S.W.2d 602, 604; State v. Thomas, Mo.Sup., 309 S.W.2d 607, 609.

The state's evidence tended to show that during the afternoon of March 30, 1957, Leon Spinks, Emel Henderson, William B. Swink and others were shooting craps in the front room of the Swink residence at 1016 North 22nd Street in the City of St. Louis. About 3:00 p. m., Spinks and Henderson got into an argument as to whether Spinks had made his point and won fifty cents. Henderson took the money, claimed it and retained it. Spinks then left the building, but Henderson stayed and was still shooting dice on the floor some fifteen or twenty minutes later, when Spinks returned with defendant Vincent. When they entered the room Henderson got up from the floor and defendant took a position to the right of Henderson, while Spinks stood to Henderson's left. When defendant entered, he had a pocket knife open and in his right hand. It had a long blade and he held it behind him as he entered the room. While defendant and Spinks stood on either side of Henderson, defendant asked Spinks who took his fifty cents. Spinks said of Henderson, "This is him." Defendant then asked Henderson, "Why did you take his money?" Henderson said, "I didn't take that money, I won it." Defendant said, "You're a damn liar. You took his money," and hit Henderson twice with his knife. Defendant struck Henderson twice with the knife in front and on the left side of the chest. Henderson was not doing anything at that time, but after he was struck, both Spinks and defendant scuffled with him and both were cutting at him, "up and down," until Henderson ran from the room. One witness said he saw no knife or other weapon in Henderson's hands at anytime but he could not say how many times Spinks struck Henderson.

Another witness said that defendant was somewhat in front of Henderson and Spinks was behind him, when defendant asked Henderson why he had taken Spinks' fifty cents; and that Henderson had something in his hand, but no knife was seen.

When Henderson left the house, he got in his car, a 1948 Oldsmobile, and drove away, but he shortly stopped, got out of his car and took a taxicab. Within three blocks the taxi driver stopped and called the police. When they arrived, they found Henderson in the front seat of the taxicab, slumped over, in an unconscious condition, bleeding about the chest. He was dead on arrival at City Hospital No. 2 and he was then taken to the city morgue, where a post mortem was performed and the cause of death determined to be hemopericardium. A stab wound was found over the left nipple which had penetrated some two inches to the pericardium and lacerated the left

ventricle of the heart. The pericardium or sac in which the heart is located had filled with blood and compressed and stopped the heart. There was also a stab wound on the left shoulder.

After Henderson's death police officers found a long spring back knife in the seat of his car. It was closed. When it was examined in the police laboratory no blood was found on the blade, recess or outer plastic handle of the knife.

In a statement to the police after his arrest, defendant stated that Henderson "had that old long knife on him and when he went to pull it out * * * I hit around with my knife. I hit him, I know because my knife broke and my hand was bleeding."

Defendant testified at the trial in his own behalf. While his testimony tended to show a somewhat different state of facts concerning the start of the difficulty; and that he had acted in self-defense, he stated that he had a white handled pocket knife in his left-hand pants pocket when he went to the mentioned address. When he saw that Henderson had a knife, he got his own knife out; and, after Henderson grabbed him, he pushed him off, and as Henderson "started back toward me, and that's when I struck him." Defendant said that after Henderson grabbed him around the neck and reached for his knife, defendant wrestled and got a couple of feet away, "far enough for me to reach and stick him." At another time defendant spoke of opening his knife and striking at Henderson. On the issues presented here we need not further review defendant's testimony.

The trial court instructed on murder in the second degree, manslaughter and self-defense. The form of these instructions is not questioned in the motion for a new trial. Murder in the second degree is correctly defined in Instruction No. 1 as the killing of a human being wilfully, premeditatedly, and with malice aforethought, but without deliberation. State v. Shriver, Mo.Sup., 275 S.W.2d 304; State v. Baber, Mo.Sup., 297 S.W.2d 439, 441; State v. Murphy, 292

Mo. 275, 237 S.W. 529, 535(12). And see Secs. 559.010, 559.020 RSMo 1949, V.A.M.S.

As stated, defendant claims that the court committed error in instructing on murder in the second degree and in permitting the jury to consider whether defendant was guilty of that offense "because the evidence had failed to prove, or tend to prove that there was present any premeditation or malice aforethought in the circumstances in which the deceased lost his life * * *."

■ The evidence reviewed was sufficient to show that defendant intentionally and without provocation, stabbed Henderson with a knife with a blade long enough to penetrate to the heart and cause death; and that a deadly weapon was used upon a vital part of deceased's body. State v. Lawson, 360 Mo. 95, 227 S.W.2d 642, 644; State v. Bowles, 146 Mo. 6, 13, 47 S.W. 892. Whether defendant acted in self-defense was for the jury, since the jury could disbelieve that part of defendant's testimony and accept the state's evidence concerning the circumstances leading up to the stabbing. Premeditation and malice aforethought were sufficiently shown. The court did not err in refusing to direct a verdict of acquital at the close of all the evidence, nor in submitting the issue of murder in the second degree. State v. Gaters, Mo. Sup., 39 S.W.2d 548, 549; State v. Nord, Mo.Sup., 286 S.W.2d 775, 776(4); State v. Tourville, Mo.Sup., 295 S.W.2d 1, 5.

■ Defendant contends that the court erred in admitting State's Exhibits 3 and 4 in evidence. The motion for a new trial refers to these exhibits, a shirt and jacket allegedly worn by the deceased at the time of his death, as "bloody garments" and states that the court permitted them to be displayed, waved and flourished in front of the jury. Defendant says they "could only serve to prejudice and inflame the jury and prevent them from viewing the trial in an impartial manner and prevented the defendant from receiving a fair trial." The exhibits were admitted in evidence, but the

record does not support the other allegations. Such allegations do not prove themselves. State v. Crocker, Mo.Sup., 275 S.W.2d 293, 297(8); State v. Lindner, Mo. Sup., 282 S.W.2d 547, 553(14). This record shows that these exhibits were identified as the shirt and jacket worn by the deceased at the time of his death. Exhibit No. 3 was shown to have three slit holes or knife marks, two in the upper left back and one in the front left. Exhibit No. 4 was shown to have two slit holes in the back. Defendant's counsel objected to these exhibits as "bloody clothing" and said "they are, obviously, bloody garments." After the court said: "I don't know what they contain," counsel said: "They apparently have blood on them. * * * They do bear some heavy, red stain." Counsel objected to them as having "no probative value at all," and said "the harm it does far outweighs any evidentiary value it might have." All objections were overruled and the exhibits were admitted to show the "knife cuts", or "knife marks." Counsel then said: "Even though it may be introduced for some other purpose, still, if it is a bloody garment, I think it is apparent that is reversible error." There was no testimony or other showing with reference to the existence of blood or stains on the exhibits. No such fact appears from the record. When the exhibits were offered in evidence, counsel renewed his objection and the record shows: "The Court: I did not examine them very closely. Did you plan on passing them to the jury?" Counsel for defendant said: "They don't show anything that isn't already shown. The Court: I'll admit them into evidence, with the understanding they won't be passed before the jury." The record fails to show that the exhibits were passed before the jury, or that they were waved or flourished at anytime, or that they were displayed except for identification purposes and to point out the knife cut or "slit hole" in the left front of Exhibit No. 3.

While the last statement of the court may be said to indicate that the stains, if any, appearing on the exhibits were apparently blood stains, still the record fails to show reversible error with reference to the identification of the garments or the examination of the witnesses with reference to knife cuts therein, or in permitting the exhibits to be admitted in evidence. Such demonstrative evidence was admissible as tending to show the use of a knife on the body of deceased and the location of a slit or cut in the vicinity of the stab wound found on the body of deceased. This demonstrative evidence also tended to support the testimony of the state's witness that defendant was cutting at deceased and stabbed him in front on the left side of the chest, a fact not then admitted by defendant. On the record presented no error or abuse of discretion appears from the admission of the exhibits in evidence. State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 83; State v. Swiney, Mo.Sup., 296 S.W.2d 112, 115(6); State v. Greer, Mo.Sup., 313 S.W. 2d 711, 713(5); State v. Miller, 364 Mo. 320, 261 S.W.2d 103, 106(4); State v. Schmittzehe, Mo.Sup., 3 S.W.2d 235, 238 (5, 6, 7). Since there is no showing that the exhibits were gruesome or that they were improperly displayed, waved, flourished or used for the purpose of inflaming the jury to the prejudice of the defendant, we find no support for defendant's contention that he did not have a fair trial on account of their admission in evidence. State v. Shawley, supra.

Error is assigned on the court's failure to give an instruction on accidental death, so that the jury could have found "that the deceased reached his death as a result of an accident," and could have returned a verdict of "not guilty by reason of excusable homicide." It is contended that defendant's testimony shows that he did not intend to hurt or kill deceased and, if a wound was inflicted, "it was not intentionally done."

Defendant testified that he went with Spinks, his brother-in-law, to Swink's house to gamble and that Spinks said of deceased, "That was the man that got my money."

When defendant asked about it, why it was done, the deceased grabbed defendant around the neck and a scuffle started. Defendant pushed him off, got loose and saw deceased had a knife. Defendant got out his knife and, when deceased started back toward him, (defendant testified) "that's when I struck him." The knife struck something and bent back and cut defendant's hand. Defendant did testify that he did not strike with any intent to kill him, or "inflict any great bodily harm"; and that his knife was used only in trying to keep deceased away. Objections were made and sustained to the questions, but the answers were not stricken. Defendant admitted that he had never known, nor seen deceased before Spinks pointed him out. At one time defendant said that deceased moved toward him with a knife, "mostly talking and arguing." As to whether the deceased's knife was in stabbing position, defendant said "I tell you I don't know what happened, it happened so quick * * * He was moving. I don't know if it was towards me or away from me. * * * When I seen him with the knife, coming toward me, I opened my knife and struck at him." Defendant also said that Spinks had a knife and wrestled with deceased until somebody parted them.

 Homicide is deemed excusable when committed by accident or misfortune and without unlawful intent. See Sec. 559.050 RSMo 1949, V.A.M.S. Where the evidence warrants an instruction on excusable homicide on account of accident, the court must give such an instruction whether requested or not, as it is a part of the law of the case. It is error to fail to give such an instruction when the facts warrant it. State v. Bradley, 352 Mo. 780, 179 S.W.2d 98, 101; State v. Crowley, 345 Mo. 1177, 139 S.W.2d 473, 475(1, 2); State v. Slaten, Mo.Sup., 252 S.W.2d 330, 331.

 We find no evidence in the record sufficient to show that any stab wound was accidently inflicted or any evidence to support a finding that the stabbing and killing of deceased by defendant was an accident or accidental. Compare the facts here with the facts in State v. Crowley, supra, 139 S.W.2d 473, 476(2); State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492, 494(3); State v. Stone, 354 Mo. 41, 188 S.W.2d 20, 22; State v. Bartley, 337 Mo. 229, 84 S.W.2d 637. Defendant's testimony tends to show an intentional stabbing in self-defense and the issue of self-defense was properly submitted to the jury. There is no substantial evidence in this record to indicate that defendant did not intend to inflict the wounds which he did, nor is there anything to show that such wounds were not the natural and ordinary consequences of defendant's intentional acts. See State v. Davis, 337 Mo. 411, 84 S.W.2d 930, 932; State v. Hogan, 352 Mo. 379, 177 S.W.2d 465. The answers of defendant, which were not stricken from the record after the objections were made and sustained, were insufficient, in view of the whole record, to sustain the giving of an instruction on accident or on excusable homicide. State v. Webb, Mo.Sup., 205 S.W. 187, 190(9); State v. Jones, Mo.Sup., 217 S.W. 22(1). The court did not err in failing to instruct on accident. State v. Hearney, Mo.Sup., 177 S.W. 305, 307(3); State v. Slaten, supra; State v. Westmoreland, Mo.Sup., 126 S.W.2d 202, 203(5).

 The final assignment of defendant's motion for new trial is that "the verdict was the result of passion and prejudice on the part of the jury against the defendant, which undoubtedly resulted from the fact that the state pleaded and offered evidence of a prior conviction of defendant for murder and of assault with intent to kill * * *." As stated, defendant was prosecuted under the habitual criminal act. The mentioned convictions were proven by records and by admissions; and that defendant had served his time and had been discharged. Defendant testified also, that he had been convicted of three prior misdemeanor offenses for which he had served terms in the St. Louis City Workhouse. The jury disregarded the admitted facts

concerning the prior felony convictions and assessed defendant's punishment at 20 years, rather than life imprisonment. See Sections 559.030 and 556.280 RSMo 1949, V.A.M.S. We find nothing in the record tending to sustain the contention that the verdict was the result of passion and prejudice against defendant. The assignment is overruled.

We have further reviewed those record matters which we must examine regardless of assignments of error and we find no error therein prejudicial to defendant.

The judgment is affirmed.

All concur.