**STATE of Missouri, Respondent,**

v.

**Alvin C. WOODARD, Appellant.**

**No. KCD 27092.**

Missouri Court of Appeals,
Kansas City District.

March 3, 1975.

Motion for Rehearing and/or Transfer
Denied March 31, 1975.

Application to Transfer Denied
May 12, 1975.

Willard B. Bunch, Public Defender, Sixteenth Judicial Circuit, Kansas City, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRIT-CHARD, C. J., and TURNAGE, J.

PRITCHARD, Chief Judge.

Defendant, Alvin C. Woodard, was originally convicted of second degree murder in the circuit court of Jackson County, Missouri. On Appeal to this court, the case was reversed and remanded for a new trial, State v. Woodard, 499 S.W.2d 553 (Mo.App.1973), because of prejudicial error in allowing the state to impeach its own witness by means of an extra-judicial statement of one of the state's witnesses as constituting substantive evidence in support of the elements of the offense charged. On retrial, defendant was found guilty by a jury of the crime of manslaughter (Section 559.070, RSMo 1969, V.A.M.S.). The jury was unable to agree upon a punishment and accordingly, the court assessed same at ten years imprisonment in the Department of Corrections. Defendant's sole assignment of error on the present appeal is the exclusion by the trial court of a purported dying declaration of the victim.

The record shows that the victim, Larry McNeal, was shot in a tavern in Kansas City, Missouri, by defendant, around 6:00 p. m., on November 13, 1971, and sustained a massive wound in his right groin from which he died seven days later. Following the shooting, decedent underwent surgery and regained consciousness in the early hours of November 14. At this time he conversed with his wife, Ann McNeal (also defendant's sister), and her testimony in material part is as follows: "Q. Can you state at approximately what time your husband was returned to the hospital room? A. Returned to the room? Q. Yes. From the operating room to the hospital room that you were in? A. It was in the early hours of Saturday morning, the 14th of November. Q. Was that the—it was after midnight? A. Yes. Q. And had he been shot—when—when had he been shot? A. About six o'clock on the 13th, I guess. Q. All right. After —upon his return, on that occasion, did he

make any statements to you with respect to his physical condition? * * * Q. You may answer that question, Mrs. McNeal. Did he make any statements with respect to his physical condition? A. Yes. He said, 'My leg', he says, 'My leg is gone.' Q. All right. Did he ask you for anything? A. Yes. Q. What was that? A. He wanted water; and the doctor told us he was to have no fluids, whatsoever; and I told him I couldn't give him any. * * * Q. Did he make any statements to you with respect to his tongue? A. Yes. Q. What was that? A. He told me he felt like he was swallowing his tongue, if I could take a cloth and drop a few drops of water in his mouth; and I told him 'no'. Q. Did he make any statement to you with respect to God? A. Yes. Yes. Q. What was that? A. 'Oh, God, please help me.' Q. Now, Mrs. McNeal, after that conversation, did you have occasion to ask your husband what had happened?"

The objection of the state was sustained upon the ground that defendant had not sufficiently proved decedent's belief of impending death and abandonment of hope of recovery and thus no proper foundation was laid for the admission of the dying declaration as an exception of the hearsay rule. Defendant offered to prove, that if the witness would have been permitted, to answer the question her answer would have been that deceased stated, "A.C. didn't mean to do it."

The matter of further proof of a proper foundation was reserved to defendant upon remand for a new trial. State v. Woodard, supra, loc. cit. 499 S.W.2d 559. Upon new trial, decedent's hospital records, and reports of attending physicians, were received in evidence, along with the testimony of Dr. Thomas Fritzlen, M.D., consultant pathologist to the Jackson County Medical Examiner's office, which specifically was: "Q. Dr. Fritzlen, you say that your records indicate that at the time he was admitted to General Hospital, he had

bled extensively? A. Yes, sir. Q. Do your records indicate how many pints of blood were given prior to the time he was removed from the operating room? A. My—my notes don't indicate that; for my purpose it was not—I didn't feel it important to exactly record that; those would be available in the record— Q. Yes? A. —but several transfusions were given. Q. Do your records indicate that he was—at the time he was removed from the operating room, he was suffering from profound shock? A. His blood pressure was somewhat restored by the time he left the operating room; it fluctuated again, according to these notes; sometimes it was quite low and other times it was normal after surgery. Q. Well, did he have a period of several hours with extremely low blood pressure? A. Yes, sir; he did. Q. And that indicates shock, itself, does it not? A. Yes, sir. Q. And it is not unusual under those circumstances, is it, Dr. Fritzlen, for someone to die of shock? A. No, sir; it's not unusual. Q. It would have been entirely possible at that time? A. From loss of blood and shock; yes, sir. Q. Is that your medical opinion? A. That a person with a major wound can lose enough blood and shock and hemorrhage to die at the time? Q. Yes, sir. A. Yes, sir."

▉ It is the well-settled rule in Missouri that to be admissible a dying declaration must be made when declarant has a belief of impending death and has abandoned hope of recovery. State v. Custer, 336 Mo. 514, 80 S.W.2d 176, 177[1, 2] (1935); State v. Davis, 337 Mo. 411, 84 S.W.2d 930 (1935), and State v. Proctor, 269 S.W.2d 624 (Mo.1954). However, it is not necessary that declarant state that he is dying or that death immediately follow the declaration. State v. Brandt, 467 S.W.2d 948, 952 (Mo.1971). These cases illustrate factual situations supportive of the admission of dying declarations: State v. Nenninger, 354 Mo. 53, 188 S.W.2d 56 (1945) [deceased in great agony and stated

that he would be dead by four o'clock]; State v. Logan, 344 Mo. 351, 126 S.W.2d 256 (1939) [deceased made a statement knowing she was mortally wounded]; State v. Davis, 337 Mo. 411, 84 S.W.2d 930 (1935) [where deceased was told by his physician that he was going to die, and deceased stated he was going to die " 'and that he wanted to tell his version of this story to clear it up.' "

Objective facts such as "the nature and extent of the inflicted wounds, statements of attending physicians made to and acquiesced in by declarant, the length of time elapsing between the making of the declaration and death itself, the administration of 'last rites', and last, but by no means least, the conduct of declarant and any and all other circumstances that reveal his apprehension of impending death and abandonment of hope for recovery. * * * Summarized, unless declarant makes express statements disclosing his state of mind . . . objective facts must be shown from which declarant's state of mind, both as to belief of impending death and abandonment of hope for recovery, may be reasonably inferred." State v. Woodard, supra, loc. cit. 499 S.W.2d 557.

▉ Applying this test to the facts in the case at bar, this court must concur with the trial court's ruling that the requisite state of mind could not be reasonably inferred from the evidence presented. Not only was there a lack of proof to support such an inference, but also, other evidence mitigated against it. Particularly persuasive is the fact, as noted by the trial court, that the hospital records show improvement in the victim's condition during his first twenty-four hours in the hospital, the period in which the statement was made. Death did not occur until six days later. Although Dr. Fritzlen testified that a person *could* die of shock, loss of blood, and hemorrhaging, he did not testify that the victim was in actual danger of dying from these causes or that the victim was aware of the extent of his injuries. The only statements by decedent concerning his con-

dition was that his leg was gone and that he was thirsty and felt like swallowing his tongue. Finally, there is his statement, "Oh, God, please help me." That statement combined with the evidence as to physical condition and decedent's own statements concerning same still does not provide a sufficient evidentiary foundation from which to infer a belief in impending death and abandonment of hope of recovery on the part of declarant. Accordingly, the ruling of the trial court that the purported dying declaration was not admissible was correct.

The judgment is affirmed.

All concur.